## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SOVEREIGN PEAK<br>VENTURES, LLC,<br>    Plaintiff,<br><br>v.<br><br>ARASHI VISION INC. d/b/a<br>INSTA360,<br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>CASE NO. 2:25-cv-1216<br><br><br>JURY TRIAL |

## COMPLAINT AND JURY DEMAND

Plaintiff Sovereign Peak Ventures, LLC ("SPV") brings this action against

Arashi Vision Inc. d/b/a Insta360, a Chinese Corporation ("Insta360") for

infringement of U.S. Patent Nos. 7,685,498; 8,019,169; 8,737,476; 8,971,401;

9,414,059; and 9,667,972 and alleges the following:

### THE PARTIES

1.     Sovereign Peak Ventures, LLC, is a Texas Limited Liability Company

with its principal place of business in Allen, Texas.

2.     Defendant Insta360 is a Chinese corporation with a principal place of

business at 12F, Building T2, Hengyu Qianhai Financial Center, Nashan District,

Shenzhen, P.R. China.

3.      Insta360 manufactures, sells, offers for sale, and/or licenses in the United States, and/or imports into the United States computer software products including Insta360's Connect camera system, X4 Camera, X5 camera, Insta360 Ace, Insta360 Ace Pro, Insta360 Ace Pro 2, Insta360 GO Ultra, Insta360 Titan, Insta360 Pro 2, Insta360 app, and products, software, and services that provide similar functionality, all of which infringe SPV's patent claims.

4.      Insta360 sells the infringing products for distribution throughout the United States and to customers in this district.

## JURISDICTION AND VENUE

5.      SPV brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) which provides that "a defendant not resident in the United States may be sued in any judicial district."

7.      Insta360 is subject to this Court's specific and general personal jurisdiction pursuant to the Texas Long-Arm Statute and consistent with due process, in view of its substantial business in Texas and in this judicial district

including: (a) its infringing activities alleged in this complaint by which Defendant purposefully avails itself of the privilege of conducting business activities in this state and district, and thus, submits itself to the jurisdiction of this Court; and (b) regularly doing or soliciting business, contracting with and engaging in other persistent conduct targeting residents of Texas and this district, or deriving substantial revenue from goods and services offered for sale, sold, and imported to and targeting residents of Texas and this district directly and through or in concert with intermediaries, agents, distributors, importers, customers, subsidiaries and/or consumers.

8.    Insta360 transacts business in this judicial district and has committed acts of infringement in this judicial district.

9.    Insta360's presence and conduct directed to residents of Texas and into this district is intended to further and advance the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing Insta360 products in Texas and in this district.

10.    Insta360 directly or through intermediaries including authorized distributors makes, uses, offers for sale, imports, sells, advertises, or distributes products and services and inducing infringement of SPV's patents in the United

States, in Texas, and in this district.

11.     Insta360 conducts its business of marketing, distributing, deploying, and selling products and services in Texas and in this district through its agents, representatives, affiliates, related entities, partners, distributors, and retailers.

12.     Insta360 continuously and systematically solicits business and contracts with residents of Texas and this district.

13.     This Court has personal jurisdiction over Insta360, directly and/or indirectly via the activities of Insta360 and its intermediaries, agents, related entities, affiliates, distributors, importers, customers, subsidiaries, or consumers. Alone and in concert with these entities, Insta360 has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas.

14.     The Court's exercise of personal jurisdiction over Insta360 is also appropriate under Federal Rule of Civil Procedure 4(k)(2) because SPV's patent infringement claims arise under federal law; Insta360 is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over Insta360 comports with due process under the U.S. Constitution.

## SOVEREIGN PEAK VENTURES

15.     SPV owns a portfolio of patents invented by employees of Panasonic Corporation.  Since its founding in 1918, Panasonic has been at the forefront of the electronics industry for over a century.  Since acquiring the Panasonic portfolio, SPV has promoted adoption of technologies claimed in the Panasonic portfolio and has entered into license agreements with numerous companies.

16.     SPV asserts that Insta360 infringes, directly and indirectly, certain claims of U.S. Patent Nos. 7,685,498; 8,019,169; 8,737,476; 8,971,401; 9,414,059; and 9,667,972 (the "SPV Asserted Patents").

## ASSERTED SPV PATENTS

17.     SPV owns a portfolio of patents invented by employees of Panasonic Corporation.  Since its founding in 1918, Panasonic has been at the forefront of the electronics industry for over a century.  Since acquiring the Panasonic portfolio, SPV has promoted the adoption of technologies claimed in the Panasonic portfolio and has entered into license agreements with numerous companies.

18.     Over the years, Panasonic has innovated in the home appliance, battery, mobile phone, and television industries.  Panasonic's invention of the "Paper Battery" in 1979 is widely credited as enabling the compact electronics of today.  In 1991, Panasonic released the Mova P, the smallest and lightest mobile

phone on the market, which revolutionized the industry by demonstrating the public's demand for a compact, lightweight device.  Panasonic also produced the first wide-format plasma display and developed the first digital television for the U.S. market.

19.    Panasonic's history of innovation is borne out by its intellectual property.  Searching the Patent Office's database for Panasonic as patent assignee yields more than 27,000 matches.

20.    Marking its centennial in 2018, Panasonic opened the Panasonic Museum to showcase its history of design philosophy and innovation.



## THE HEVC ACCUSED PRODUCTS

21.    The term "HEVC Accused Products" include Insta360 products that are capable of decoding and encoding video to conform with the HEVC/H.265 standard, including Insta360's Connect camera system, X4 Camera, X5 camera, Insta360 Ace, Insta360 Ace Pro, Insta360 Ace Pro 2, Insta360 GO Ultra, Insta360 Titan, Insta360 Pro 2, Insta360 X4 Air, and products, software, and services that provide similar functionality.



https://www.insta360.com/product/insta360-connect



**Insta360 X5**
Flagship 8K 360 camera.

Learn more    Buy now



**Insta360 X4**
The 8K game changer.

Learn more    Buy now



**Insta360 Ace Pro**
**Insta360 Ace**
Capture action smarter.

Learn more    Buy now



**Insta360 Ace Pro 2**
8K AI-powered action camera.

Learn more    Buy now

https://www.insta360.com/







22.    The Insta360 X5 exemplifies the HEVC Accused Products.  It encodes video to conform with the HEVC/H.265 standard.





https://www.insta360.com/product/insta360-x5

**NOTICE OF SPV ASSERTED PATENTS**

23.    By this complaint, Insta360 is on notice that it has infringed U.S. Patent Nos. 7,685,498; 8,019,169; 8,737,476; 8,971,401; 9,414,059; and 9,667,972.

## COUNT 1
## INFRINGEMENT OF U.S. PATENT NO. 7,685,498

24.     SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

25.     SPV is the owner, by assignment, of U.S. Patent No. 7,685,498.  The '498 Patent was issued by the United States Patent and Trademark Office on March 23, 2010.

26.     As the owner of the '498 Patent, SPV holds all substantial rights in and under the '498 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

27.     The '498 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

28.     Insta360 has infringed and continues to infringe at least claim 9 of the '498 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing and/or importing the HEVC Accused Products and all other similar products that infringe the '498 Patent without authorization or license as exemplified below.

29.     The HEVC Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '498 Patent and feature

structures and/or functionality as shown below.

30.    Insta360 has used and tested the HEVC Accused Products in the United States.

31.    Insta360 has infringed and continues to infringe the '498 Patent.

32.    Insta360's activities were without authority of license under the '498 Patent.

33.    Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the HEVC Accused Products according to their normal and intended use.

34.    The HEVC Accused Products satisfy each and every element of each asserted claim of the '498 Patent either literally or under the doctrine of equivalents.

35.    Claim 9 of the '498 recites an embodiment of the claimed subject matter:

9. A transmission apparatus for use in a digital broadcasting system for transmitting and receiving, via a network, a broadcast stream created from a

broadcast source, the broadcast source including image and audio data and being used for broadcasting, said transmission apparatus comprising:

> a coding unit operable to code the broadcast source based on a characteristic of the broadcast source and operable to generate a first layer code and a second layer code, respectively, being for reproduction of the broadcast source;

> a synthesizing unit operable to generate data bursts, each of the generated data bursts including the generated first layer code and second layer code;

> a multiplexing unit operable to create the broadcast stream by multiplexing the generated data bursts; and

> a transmitting unit operable to transmit the created broadcast stream to the network.

36.     The HEVC Accused Products are a transmission apparatus for use in a digital broadcasting system for transmitting and receiving, via a network, a broadcast stream created from a broadcast source, the broadcast source including image and audio data and being used for broadcasting.

37.     For example, each HEVC Accused Product is a transmission

apparatus that is enabled to transmit digital HEVC-encoded content streams of video and audio via the internet.





https://www.insta360.com/product/insta360-x5

38.    The HEVC Accused Products include a coding unit operable to code the broadcast source based on a characteristic of the broadcast source and operable to generate a first layer code and a second layer code from the coded broadcast source, the first layer code and the second layer code, respectively, being for reproduction of the broadcast source.

39.    For example, each HEVC Accused Product has a coding unit operable to encode a video source to create a broadcast stream that conforms to the H.265 standard.  The H.265 conformant stream is encoded based on a characteristic of the source video such as spatial and temporal dependencies.

> **0.7    Overview of the design characteristics**
>
> The coded representation specified in the syntax is designed to enable a high compression capability for a desired image or video quality. The algorithm is typically not lossless, as the exact source sample values are typically not preserved through the encoding and decoding processes. A number of techniques may be used to achieve highly efficient compression. Encoding algorithms (not specified in this Recommendation | International Standard) may select between inter and intra coding for block-shaped regions of each picture. Inter coding uses motion vectors for block-based inter prediction to exploit temporal statistical dependencies between different pictures. Intra coding uses various spatial prediction modes to exploit spatial statistical dependencies in the source signal for a single picture. Motion vectors and intra prediction modes may be specified for a variety of block sizes in the picture. The prediction residual may then be further compressed using a transform to remove spatial correlation inside the transform block before it is quantized, producing a possibly irreversible process that typically discards less important visual information while forming a close approximation to the source samples. Finally, the motion vectors or intra prediction modes may also be further compressed using a variety of prediction mechanisms, and, after prediction, are combined with the quantized transform coefficient information and encoded using arithmetic coding.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (06/2019)) at pp. 2-3.

40.    The H.265 conformant stream is encoded to include a first layer code and a second layer code as a NAL Unit Type that indicates the Video Coding Layer (VCL) for picture data or the non-VCL for supplemental coding information. The VCL and non-VCL codes are used for the reproduction of the video source.

> **7.4.2.2    NAL unit header semantics**
>
> **forbidden_zero_bit** shall be equal to 0.
>
> **nal_unit_type** specifies the type of RBSP data structure contained in the NAL unit as specified in Table 7-1.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (06/2019)) at p. 64.

```
Type: 6 bits
    nal_unit_type.  This field specifies the NAL unit type as defined
    in Table 7-1 of [HEVC].  If the most significant bit of this field
    of a NAL unit is equal to 0 (i.e., the value of this field is less
    than 32), the NAL unit is a VCL NAL unit.  Otherwise, the NAL unit
    is a non-VCL NAL unit.  For a reference of all currently defined
    NAL unit types and their semantics, please refer to Section 7.4.2
    in [HEVC].
```

https://datatracker.ietf.org/doc/html/rfc7798.

41.    The HEVC Accused Products includes a synthesizing unit operable to generate data bursts, each of the generated data bursts including the generated first layer code and second layer code.

42.    For example, each of the HEVC Accused Products has a synthesizing unit that generates access units which are bursts of data. The access units are coded (synthesized) such that the data bursts have concrete boundaries, which may be signaled by an access unit delimiter for simplicity. Each access unit contains NAL units which each include a NAL Unit Type indicating VCL or non-VCL NAL units.

> **7.4.3.5    Access unit delimiter RBSP semantics**
>
> The access unit delimiter may be used to indicate the type of slices present in the coded pictures in the access unit containing the access unit delimiter NAL unit and to simplify the detection of the boundary between access units. There is no normative decoding process associated with the access unit delimiter.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (06/2019)) at p. 87.

**7.4.2.4.4  Order of NAL units and coded pictures and their association to access units**

This clause specifies the order of NAL units and coded pictures and their association to access units for CVSs that conform to one or more of the profiles specified in Annex A and that are decoded using the decoding process specified in clauses 2 through 10.

An access unit consists of one coded picture with nuh_layer_id equal to 0, zero or more VCL NAL units with nuh_layer_id greater than 0 and zero or more non-VCL NAL units. The association of VCL NAL units to coded pictures is described in clause 7.4.2.4.5.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (06/2019)) at p. 69.

43.    The HEVC Accused Products include a multiplexing unit operable to create the broadcast stream by multiplexing the generated data bursts.

44.    For example, a multiplexing unit of the HEVC Accused Products assembles the access units into a continuous bitstream.



**Figure 7-1 – Structure of an access unit not containing any NAL units with nal_unit_type equal to FD_NUT, SUFFIX_SEI_NUT, VPS_NUT, SPS_NUT, PPS_NUT, RSV_VCL_N10, RSV_VCL_R11, RSV_VCL_N12, RSV_VCL_R13, RSV_VCL_N14, RSV_VCL_R15, RSV_IRAP_VCL22 or RSV_IRAP_VCL23, or in the range of RSV_VCL24..RSV_VCL31, RSV_NVCL41..RSV_NVCL47 or UNSPEC48..UNSPEC63**

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (06/2019)) at p. 71.



https://link.springer.com/article/10.1007/s11554-019-00923-5/figures/3.



https://www.slideshare.net/slideshow/hevc-definitions-and-highlevel-syntax/42876564#3.

45.    The HEVC Accused Products include a transmitting unit operable to transmit the created broadcast stream to the network.

46.    For example, a transmitting unit of the HEVC Accused Products outputs the complete bitstream via a network (*e.g.*, the Internet).  The transmitting unit may be any of the network interfaces used by the HEVC Accused Products. These interfaces receive the HEVC encoded bitstream and transmit it into the network.



https://www.researchgate.net/figure/HEVC-H265-Encoder-Block-diagram-

6_fig1_322647449.

47.    Insta360 was provided with notice that it infringes the '498 Patent no later than the filing date of this complaint.  Insta360's knowledge of the '498 Patent, which covers operating the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '498 Patent are met, extends to its knowledge that the third-party infringers' use of the HEVC Accused Products directly infringes the '498 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

48.    Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use, manufacture, sale, offer for sale, and/or importation of the HEVC Accused Products directly infringes the '498 Patent.

49.    With knowledge of or willful blindness to the fact that the third-party infringers' use, manufacture, sale, distribution, offer for sale, license and/or importation of the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '498 Patent are met directly infringes the '498 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '498 Patent by making, using, testing, selling, offering for sale,

importing and/or licensing the HEVC Accused Products HEVC/H.265 transmission capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the HEVC/H.265 functionalities; and providing technical assistance to the third-party infringers during their continued use of the HEVC Accused Products such as by, for example, publishing instructional information on the Insta360 websites directing and encouraging third-party infringers how to make and use the HEVC/H.265 of the HEVC Accused Products.

50.     Insta360 induces the third-party infringers to infringe the asserted claims of the '498 Patent by directing or encouraging them to operate the HEVC Accused Products which satisfy all limitations of the asserted claims of the '498 Patent. For example, Insta360 advertises and promotes the HEVC/H.265 features of the Insta360 Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 further provides technical assistance directing and instructing third parties how to operate the HEVC Accused Products by, for example, publishing instructional materials, videos, troubleshooting, manuals, and user guides. In response, the third-party infringers acquire, make, sell, offer to sell, license, operate, and/or import the HEVC Accused Products in an infringing manner.

51.    Insta360 specifically intends to induce, and did induce, the third-party infringers to infringe the asserted claims of the '498 Patent, and Insta360 knew of or was willfully blind to such infringement. Insta360 advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the HEVC/H.265 transmission capabilities of the HEVC Accused Products. Having known or been willfully blind to the fact that the third-party infringers' use of the HEVC Accused Products in their intended manner such that all limitations of asserted claims of the '498 Patent were met directly infringed the '498 Patent, Insta360, actively encouraged and induced the third-party infringers to directly infringe the '498 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said HEVC Accused Products, and by, for example: marketing the HEVC Accused Products to the third-party infringers; supporting and managing the third-party infringers' use of the HEVC Accused Products; and providing technical assistance to the third-party infringers during their continued use of the HEVC Accused Products by, for example, publishing training videos that instruct third-party infringers how to make and use the HEVC Accused Products to infringe the asserted claims of the '498 Patent.

52.    Insta360 has induced and continues to induce infringement of the asserted claims of the '498 Patent under 35 U.S.C. § 271(b).

53.    Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the HEVC Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '498 Patent.  For example, the HEVC Accused Products include HEVC/H.265 transmission features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the HEVC Accused Products.

54.    Insta360 also knew that the HEVC Accused Products are operated in a manner that practices each asserted claim of the '498 Patent.

55.    The HEVC/H.265 features are specially made and adapted to infringe the asserted claims of the '498 Patent.

56.    The HEVC/H.265 transmission features are not a staple article or commodity of commerce, and, because the functionality was designed to work with the HEVC Accused Products solely in a manner that is covered by the '498

Patent, it has no substantial non-infringing use. At least by SPV's notice of Insta360's infringement, based upon the foregoing facts, Insta360 knew of or was willfully blind to the fact that such functionality was specially made and adapted for—and was in fact used in—the HEVC Accused Products in a manner that is covered by the '498 Patent.

57.    Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '498 Patent under 35 U.S.C. § 271(c).

58.    Insta360's continuing acts of infringement of the '498 Patent since notice and since this complaint was filed are, therefore, carried out with knowledge of the asserted claims of the '498 Patent and how the HEVC Accused Products infringe them.  Rather than take a license to the '498 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

59.    Insta360's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 2
## INFRINGEMENT OF U.S. PATENT NO. 8,019,169

60.    SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

61.    SPV is the owner, by assignment, of U.S. Patent No. 8,019,169.  The '169 Patent was issued by the United States Patent and Trademark Office on September 13, 2011.

62.    As the owner of the '169 Patent, SPV holds all substantial rights in and under the '169 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

63.    The '169 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

64.    Insta360 has infringed, and continues to infringe, at least claim 20 and 21 of the '169 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing Accused Products and all similar products that infringe the '169 Patent without authorization or license as exemplified below.

65.    The HEVC Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '169 Patent and feature

structure and/or functionality comprising the steps noted above.

66.    Insta360 has used and tested the HEVC Accused Products in the United States.

67.    Insta360 has infringed and continues to infringe the '169 Patent.

68.    Insta360's activities were without authority or license.

69.    Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the HEVC Accused Products according to their normal and intended use.

70.    The HEVC Accused Products meet each and every limitation of each asserted claim of the '169 Patent either literally or under the doctrine of equivalents.

71.    Claim 20 of the '169 patent recites an embodiment of the claimed subject matter:

An image coding method comprising the steps of:

searching at least one second still image which is similar to a first still image from a group of images;

generating a predictive image for the first still image using the at least

one second still image as a reference image;

coding, by generating a bit stream by coding a difference between the first still image and the predictive image; and

adding, to the bit stream, information which indicates a location of the at least one second still image.

72.    The HEVC Accused Products perform an image coding method.

73.    For example, each Accused Product encodes video to conform with the HEVC standard for video encoding.

| 3.54 | **encoding process**: A process not specified in this Specification that produces a *bitstream* conforming to this Specification. |
|------|------|

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 7.

74.    The HEVC Accused Products performs a method that searches at least one second still image which is similar to a first still image from a group of images.

75.    For example, when encoding video, theHEVC Accused Products performs a motion estimation process wherein the encoder searches a Reference Frame (*e.g.*, still image that is similar to the Current Frame, a first still image).



https://www.semanticscholar.org/paper/Fast-Motion-Estimation-Algorithm-for-HEVC-Nalluri-Alves/61508b378101431f5e282cff99e3a840745c8c47.

76.    The HEVC Accused Products perform a method that generates a predictive image for the first still image using the at least one second still image as a reference image.

77.    For example, when encoding video, the HEVC Accused Products generate a predictive image through the use of an inter-prediction process that uses the Reference Frame as reference for the predictive image. Additionally, the Motion Vectors are applied to the Reference Frame to produce the predictive image, and the difference between the predictive image and the first still image is defined by a residual.



https://www.semanticscholar.org/paper/Fast-Motion-Estimation-Algorithm-for-HEVC-Nalluri-Alves/61508b378101431f5e282cff99e3a840745c8c47.



**Fig. 3.1** Block diagram of an HEVC encoder with built-in decoder (*gray shaded*)

https://www.researchgate.net/publication/300315241_Block_Structures_and_Parallelism_Features_in_HEVC.

78.     The HEVC Accused Products perform a method that codes, by generating a bit stream by coding a difference between the first still image and the predictive image.

79.     For example, each HEVC Accused Product codes a residual (*e.g.*, difference between the first still image and the predictive image).



**Fig. 3.1**  Block diagram of an HEVC encoder with built-in decoder (*gray shaded*)

https://www.researchgate.net/publication/300315241_Block_Structures_and_Paral

lelism_Features_in_HEVC.

80.    The HEVC Accused Products perform a method that adds, to the bit stream, information which indicates a location of the at least one second still image.

81.    For example, each HEVC Accused Product encodes a bit stream that includes bits that indicate an index for the reference picture (*e.g.*, second still image).

> **short_term_ref_pic_set_idx** specifies the index, into the list of the st_ref_pic_set( ) syntax structures included in the active SPS, of the st_ref_pic_set( ) syntax structure that is used for derivation of the short-term RPS of the current picture. The syntax element short_term_ref_pic_set_idx is represented by Ceil( Log2( num_short_term_ref_pic_sets ) ) bits. When not present, the value of short_term_ref_pic_set_idx is inferred to be equal to 0. The value of short_term_ref_pic_set_idx shall be in the range of 0 to num_short_term_ref_pic_sets − 1, inclusive.

https://www.itu.int/rec/T-REC-H.265/en  (H.265 Specification (11/2019)) at p. 96.

82.    Claim 21 of the '169 patent recites an embodiment of the claimed subject matter:

An image decoding method comprising the steps of:

acquiring a bit stream and additional information which indicates a first still image;

acquiring a second still image indicated in the additional information;

generating a predictive image for the first image using the second still image as a reference image; and

adding prediction residual obtained from the bit stream indicating the

first image and the predictive image to obtain the first still image.

83.    The HEVC Accused Products perform an image decoding method.

84.    For example, the HEVC Accused Products perform a H.265 image decoding method.

| 8 | Decoding process |
| --- | --- |
| **8.1** | **General decoding process** |
| **8.1.1** | **General** |

Input to this process is a bitstream. Output of this process is a list of decoded pictures.

The decoding process is specified such that all decoders that conform to a specified profile, tier and level will produce numerically identical cropped decoded output pictures when invoking the decoding process associated with that profile

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 116.

85.    The HEVC Accused Products acquire a bit stream and additional information which indicates a first still image.

86.    For example, for the H.265 decoding process, a decoder acquires a bit stream and additional information by receiving an input bit stream (H.265 entireBitstream) and extracting a sub-bitstream (*e.g.,* '169 additional information) and assigning that extraction output to a bitstream referred to as "BistreamToDecode".

87.    "BitstreamToDecode" indicates a current picture (first still image) via

the variable "CurrPic". The syntax elements and upper-case variables from the H.265 Clause 7 (entitled "Syntax and Semantics") are used as inputs to the decoding process for the current pictures.  When the decoder interprets the semantics of each syntax element in each NAL unit, H.265's use of the term "the bit stream" (or part thereof, *e.g.*, coded video sequence (CVS) of the bit stream) refers to BitstreamToDecode.

| | |
|---|---|
| **8** | **Decoding process** |
| **8.1** | **General decoding process** |
| **8.1.1** | **General** |

Input to this process is a bitstream. Output of this process is a list of decoded pictures.

The decoding process is specified such that all decoders that conform to a specified profile, tier and level will produce numerically identical cropped decoded output pictures when invoking the decoding process associated with that profile

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 116.

**8.1.3     Decoding process for a coded picture with nuh_layer_id equal to 0**

The decoding processes specified in this clause apply to each coded picture with nuh_layer_id equal to 0, referred to as the current picture and denoted by the variable CurrPic, in BitstreamToDecode.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 117.

**F.8.1.3   Common decoding process for a coded picture**

The decoding processes specified in the remainder of this clause apply to each coded picture, referred to as the current picture and denoted by the variable CurrPic, in BitstreamToDecode.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 499.

> **3.160  sub-bitstream extraction process**: A specified process by which *NAL units* in a *bitstream* that do not belong to a target set, determined by a target highest TemporalId and a target *layer identifier list*, are removed from the *bitstream*, with the output sub-bitstream consisting of the NAL units in the *bitstream* that belong to the target set.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 12.

88.     "BitstreamToDecode" comprises the NAL units of the input entireBitstream that belong to a target set (after the NAL units that do not belong to a target set are removed) according to sub-bitstream extraction process input variables, *e.g.*, OpTid (equal to the highest TemporalId of all NAL units included in the operation point) and OpLayerIDList (list of nuh_layer_id values of all NAL units included in the operation point).

> A layer set is identified by the associated layer identifier list. The i-th layer set specified by the VPS is associated with the layer identifier list LayerSetLayerIdList[ i ], for i in the range of 0 to vps_num_layer_sets_minus1, inclusive.
>
> A layer set consists of all operation points that are associated with the same layer identifier list.
>
> Each operation point is identified by the associated layer identifier list, denoted as OpLayerIdList, which consists of the list of nuh_layer_id values of all NAL units included in the operation point, in increasing order of nuh_layer_id values, and a variable OpTid, which is equal to the highest TemporalId of all NAL units included in the operation point. The bitstream subset associated with the operation point identified by OpLayerIdList and OpTid is the output of the sub-bitstream extraction process as specified in clause 10 with the bitstream, the target highest TemporalId equal to OpTid, and the target layer identifier list equal to OpLayerIdList as inputs. The OpLayerIdList and OpTid that identify an operation point are also referred to as the OpLayerIdList and OpTid associated with the operation point, respectively.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 74.

> ## Annex C
>
> ### Hypothetical reference decoder
>
> (This annex forms an integral part of this Recommendation | International Standard.)
>
> **C.1     General**
>
> This annex specifies the hypothetical reference decoder (HRD) and its use to check bitstream and decoder conformance.

> For each test, the following ordered steps apply in the order listed, followed by the processes described after these steps in this clause:

> 1. An operation point under test, denoted as TargetOp, is selected by selecting a layer identifier list OpLayerIdList and a target highest TemporalId value OpTid. The layer identifier list OpLayerIdList of TargetOp either consists of all the nuh_layer_id values of the VCL NAL units present in entireBitstream or consists of all the nuh_layer_id values of a layer set specified by the active VPS. The value of OpTid is in the range of 0 to sps_max_sub_layers_minus1, inclusive. The values of OpLayerIdList and OpTid are such that the sub-bitstream BitstreamToDecode that is the output by invoking the sub-bitstream extraction process as specified in clause 10 with entireBitstream, OpTid and OpLayerIdList as inputs satisify both of the following conditions:
>    – There is at least one VCL NAL unit in BitstreamToDecode with nuh_layer_id equal to each of the nuh_layer_id values in OpLayerIdList.
>    – There is at least one VCL NAL unit with TemporalId equal to OpTid in BitstreamToDecode.

https://www.itu.int/rec/T-REC-H.265/en  H.265 Specification (11/2019) at pp. 273, 274.

89.    The HEVC Accused Products performs a method that acquires a second still image indicated in the additional information.

90.    For example, for the H.265 decoding process, the decoder acquires a reference picture (*e.g.,* "second still image") by selecting a reference picture from a reference picture list, which is included in the sub-bitstream (*e.g,* "additional information").

91.    The decoding process for the reference picture set is an example process for decoding the sub-bitstream.

> **8.3.2    Decoding process for reference picture set**
>
> This process is invoked once per picture, after decoding of a slice header but prior to the decoding of any coding unit and prior to the decoding process for reference picture list construction for the slice as specified in clause 8.3.4. This process may result in one or more reference pictures in the DPB being marked as "unused for reference" or "used for long-term reference".
>
> > NOTE 1 – The RPS is an absolute description of the reference pictures used in the decoding process of the current and future coded pictures. The RPS signalling is explicit in the sense that all reference pictures included in the RPS are listed explicitly.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 120.

> **8.3.4    Decoding process for reference picture lists construction**
>
> This process is invoked at the beginning of the decoding process for each P or B slice.
>
> Reference pictures are addressed through reference indices as specified in clause 8.5.3.3.2. A reference index is an index into a reference picture list. When decoding a P slice, there is a single reference picture list RefPicList0. When decoding a B slice, there is a second independent reference picture list RefPicList1 in addition to RefPicList0.
>
> At the beginning of the decoding process for each slice, the reference picture lists RefPicList0 and, for B slices, RefPicList1 are derived.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 125.

> **8.5.3.3.2    Reference picture selection process**
>
> Input to this process is a reference index refIdxLX.
>
> Output of this process is a reference picture consisting of a two-dimensional array of luma samples $refPicLX_L$ and, when ChromaArrayType is not equal to 0, two two-dimensional arrays of chroma samples $refPicLX_{Cb}$ and $refPicLX_{Cr}$.
>
> The output reference picture RefPicListX[ refIdxLX ] consists of a pic_width_in_luma_samples by pic_height_in_luma_samples array of luma samples $refPicLX_L$ and, when ChromaArrayType is not equal to 0, two PicWidthInSamplesC by PicHeightInSamplesC arrays of chroma samples $refPicLX_{Cb}$ and $refPicLX_{Cr}$.
>
> The reference picture sample arrays $refPicLX_L$, $refPicLX_{Cb}$ and $refPicLX_{Cr}$ correspond to decoded sample arrays $S_L$, $S_{Cb}$ and $S_{Cr}$ derived in clause 8.7 for a previously-decoded picture.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 164.

92.    The HEVC Accused Products perform a method that generates a predictive image for the first image using the second still image as a reference image.

93.    For example, the predictive picture is derived from the reference picture for the inter prediction processes included in the H.265 decoding process. The output of the inter prediction decoding is a modified reconstructed picture before deblocking filtering, which is a predictive image.

| 3.69 | **inter prediction**: A *prediction* derived in a manner that is dependent on data elements (e.g., sample values or motion vectors) of one or more *reference pictures*.<br>NOTE – A prediction from a reference picture that is the current picture itself is also inter prediction. |
|------|---|

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 7.

**8.5    Decoding process for coding units coded in inter prediction mode**

**8.5.1    General decoding process for coding units coded in inter prediction mode**

Inputs to this process are:

–  a luma location ( xCb, yCb ) specifying the top-left sample of the current luma coding block relative to the top-left luma sample of the current picture,

–  a variable log2CbSize specifying the size of the current coding block.

Output of this process is a modified reconstructed picture before deblocking filtering.

The derivation process for quantization parameters as specified in clause 8.6.1 is invoked with the luma location ( xCb, yCb ) as input.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019) at p. 142.

**8.5.2    Inter prediction process**

This process is invoked when decoding coding unit whose CuPredMode[ xCb ][ yCb ] is not equal to MODE_INTRA.

Inputs to this process are:

–  a luma location ( xCb, yCb ) specifying the top-left sample of the current luma coding block relative to the top-left luma sample of the current picture,

–  a variable log2CbSize specifying the size of the current luma coding block.

Outputs of this process are:

–  an (nCbS$_L$)x(nCbS$_L$) array predSamples$_L$ of luma prediction samples, where nCbS$_L$ is derived as specified below,

–  when ChromaArrayType is not equal to 0, an (nCbSw$_C$)x(nCbSh$_C$) array predSamples$_{Cb}$ of chroma prediction samples for the component Cb, where nCbSw$_C$ and nCbSh$_C$ are derived as specified below,

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019) at p. 143.

94.    The HEVC Accused Products perform a method that adds a prediction residual obtained from the bit stream indicating the first image and the predictive image to obtain the first still image.

95.    For example, for the H.265 decoding process, arrays of prediction residual samples obtained from the bit stream, at a location where the additional information BitstreamToDecode indicating the first still image was extracted, are added to the predictive image (as array of samples predicted for the first still image) to generate the first still image.

> The decoding process for coding units coded in inter prediction mode consists of the following ordered steps:
>
> 1.  The inter prediction process as specified in clause 8.5.2 is invoked with the luma location ( xCb, yCb ) and the luma coding block size log2CbSize as inputs, and the outputs are the array predSamples$_L$ and, when ChromaArrayType is not equal to 0, the arrays predSamples$_{Cb}$ and predSamples$_{Cr}$.
> 2.  The decoding process for the residual signal of coding units coded in inter prediction mode specified in clause 8.5.4 is invoked with the luma location ( xCb, yCb ) and the luma coding block size log2CbSize as inputs, and the outputs are the array resSamples$_L$ and, when ChromaArrayType is not equal to 0, the arrays resSamples$_{Cb}$ and resSamples$_{Cr}$.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 143.

**8.6.7    Picture construction process prior to in-loop filter process**

Inputs to this process are:

– a location ( xCurr, yCurr ) specifying the top-left sample of the current block relative to the top-left sample of the current picture component,

– the variables nCurrSw and nCurrSh specifying the width and height, respectively, of the current block,

– a variable cIdx specifying the colour component of the current block,

– an (nCurrSw)x(nCurrSh) array predSamples specifying the predicted samples of the current block,

– an (nCurrSw)x(nCurrSh) array resSamples specifying the residual samples of the current block.

Depending on the value of the colour component cIdx, the following assignments are made:

– If cIdx is equal to 0, recSamples corresponds to the reconstructed picture sample array $S_L$ and the function clipCidx1 corresponds to Clip1$_Y$.

– Otherwise, if cIdx is equal to 1, recSamples corresponds to the reconstructed chroma sample array $S_{Cb}$ and the function clipCidx1 corresponds to Clip1$_C$.

– Otherwise (cIdx is equal to 2), recSamples corresponds to the reconstructed chroma sample array $S_{Cr}$ and the function clipCidx1 corresponds to Clip1$_C$.

The (nCurrSw)x(nCurrSh) block of the reconstructed sample array recSamples at location ( xCurr, yCurr ) is derived as follows:

$$\text{recSamples}[\,xCurr + i\,][\,yCurr + j\,] = \text{clipCidx1}(\,\text{predSamples}[\,i\,][\,j\,] + \text{resSamples}[\,i\,][\,j\,]\,) \qquad (8\text{-}327)$$
$$\text{with } i = 0..nCurrSw - 1, \; j = 0..nCurrSh - 1$$

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 182.

96.    SPV notified Insta360 that it infringed the '169 Patent no later than the filing date of this complaint.

97.    Insta360's knowledge of the '169 Patent, which covers operating the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '169 Patent are met, extends to its knowledge that the third-party infringers' use of the HEVC Accused Products directly infringes the '169 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

98.    Insta360 has, since at least as early as the filing date of this complaint,

known or been willfully blind to the fact that the third-party infringers' use of the HEVC Accused Products directly infringes the '169 Patent.

99.    With knowledge of or willful blindness to the fact that the third-party infringers' use of the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '169 Patent are met directly infringes the '169 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '169 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the HEVC Accused Products by, for example: marketing Insta360's Devices HEVC/H.265 capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the HEVC/H.265 functionalities; and providing technical assistance to the third-party infringers during their continued use of the HEVC Accused Products such as by, for example, publishing instructional information on the Insta360 websites directing and encouraging third-party infringers how to make and use the HEVC/H.265 of the HEVC Accused Products.

100.   Insta360 induces third-party infringers to infringe the asserted claims of the '169 Patent by directing or encouraging them to operate the HEVC Accused Products which satisfy all limitations of the asserted claims of the '169 Patent.

Insta360 advertises and promotes the HEVC/H.265 features of the HEVC Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 provides technical assistance directing and instructing third parties how to operate the HEVC Accused Products by, for example, publishing instructional materials, videos, troubleshooting, manuals, and user guides.

101. In response, the third-party infringers acquire and operate the HEVC Accused Products in an infringing manner.

102. Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the HEVC Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '169 Patent. For example, the HEVC Accused Products include HEVC/H.265 features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the HEVC Accused Products.

103. Insta360 also knew and intended that the HEVC Accused Products would be operated in a manner that practices the asserted claims of the '169 Patent.

104.   The HEVC/H.265 features are specially made and adapted to infringe the asserted claims of the '169 Patent.

105.   The HEVC/H.265 features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the HEVC Accused Products solely in a manner that is covered by the '169 Patent, they have no substantial non-infringing use. At least by SPV's notice of Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '169 Patent and they were in fact used to infringe.

106.   Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '169 Patent under 35 U.S.C. § 271(c).

107.   Insta360's acts of infringement of the '169 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '169 Patent and how the HEVC Accused Products infringe them.  Rather than take a license to the '169 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

108.    Insta360's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 3
## INFRINGEMENT OF U.S. PATENT NO. 8,737,476.

109.    SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

110.    SPV is the owner, by assignment, of U.S. Patent No. 8,737,476.  The '476 Patent was issued by the United States Patent and Trademark Office, on May 27, 2014.

111.    As the owner of the '476 Patent, SPV holds all substantial rights in and under the '476 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

112.    The '476 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

113.    Insta360 has infringed, and continues to infringe, at least claim 14 of the '476 Patent by making, using, offering to sell, selling, distributing, licensing,

and/or importing HEVC Accused Products and all similar products that infringe the '476 Patent without authorization or license as exemplified below.

114.   The HEVC Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '476 Patent and feature structure and/or functionality comprising the steps noted above.

115.   Insta360 has used and tested the HEVC Accused Products in the United States.

116.   Insta360 has infringed and continues to infringe the '476 Patent.

117.   Insta360's activities were without authority or license.

118.   Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the HEVC Accused Products according to their normal and intended use.

119.   The HEVC Accused Products meet each and every limitation of each asserted claim of the '476 Patent either literally or under the doctrine of equivalents.

120.   Claim 14 of the '476 patent recites an embodiment of the claimed subject matter:

14. An image decoding method of decoding coded image data on a block-by-block basis, the coded image data being resulted from coding, on a block-by-block basis, of image data partitioned into blocks each of which has a predetermined number of pixels, said image decoding method comprising:

pre-decoding, on a block-by-block basis, reference information indicating a number of reference images to be referred to on a block-by-block basis for decoding the coded image data;

calculating, on a block-by-block basis using the reference information, a predictive data amount of a reference image to be read out on a block-by-block basis from a storage unit for decoding the coded image data, the storage unit storing data of at least one reference image to be referred to for decoding the coded image data;

determining, using the predictive data amount calculated, multiple blocks in the coded image data which are to be decoded in parallel, in such a manner as to reduce variation in amounts of data read out from the storage unit; and

decoding in parallel the determined multiple blocks in the coded image data.

121. The HEVC Accused Products perform an image decoding method of decoding coded image data on a block-by-block basis, the coded image data being resulted from coding, on a block-by-block basis, of image data partitioned into blocks each of which has a predetermined number of pixels.

122. For example, the HEVC Accused Products each implement an image decoding method that decoded coded images on a block-by-block basis. The HEVC Accused Product use blocks in the decoding process (CTUs) that have a 'predetermined' numbered of pixels (e.g., 64 x 64 pixels). As shown below the "image data is partitioned into blocks each of which has a predetermined number of pixels" and "coded image data being resulted from coding, on a block-by-bock basis."



Figure 2: Structure of an HEVC encoder and decoder



Figure 3: Picture, slice, Coding Tree Unit (CTU), Coding Units (CUs)



Figure 4: Video frame showing Slices and Coding Tree Units (source: Parabola Research)



Figure 5: Coding Tree Unit subdivided into Coding Units (source: Parabola Research)

https://www.vcodex.com/hevc-an-introduction-to-high-efficiency-coding/.

| Options | Value |
| --- | --- |
| Max. CU size | 64×64 |
| Max. partition depth | 4 |
| Transform size: Min.-Max. | 4-32 |
| Period of I-frames | 256 |
| Number of B-frames (GOP Size) | 8 |
| Number of reference frames | 4 |
| Motion estimation algorithm | EPZS [25] |
| Search range | 48 |
| Asymmetrical Motion Partition | Enabled |
| Internal bit depth | 8 |
| Sample Adaptive Offset (SAO) | Enabled |
| Wavefront Parallel Processing (WPP) | Enabled |
| Quantization Parameter (QP) | 22, 26, 30, 34 |

**Table 2**  Coding options.

https://www.researchgate.net/publication/235760260_Parallel_HEVC_Decoding_on_Multi-_and_Many-core_Architectures

123.   The HEVC Accused Products perform a method that pre-decodes, on a block-by-block basis, reference information indicating a number of reference images to be referred to on a block-by-block basis for decoding the coded image data.

124.   For example, Section 8.3 ("Slice decoding process") of the H.265/HEVC specification evidences that the HEVC Accused Products perform the claimed method. The slice decoding process implemented by the HEVC

Accused Product's H.265 decoder includes obtaining reference information that indicates a 'number of reference images' for decoding an image slice prior to decoding (*e.g.*, "pre-decoding") the current image to be decoded on a block-by-block basis. The HEVC Accused Product's H.265 decoder receives information from the slice header that includes RPS (Reference Picture Set) information.

125. The RPS information contains "reference information" indicating number of images to be referred to for decoding an image slice (*e.g.* in the example below, images I0 and P1 are the "reference images" used to decode image B2). For example, RPS contains syntax and index structures that refer to one or more reference pictures and how those reference pictures are to be used to decode image slices.

> *E. Order of Picture Decoding and DPB Operations*
>
> The order of picture decoding and DPB operations in HEVC is changed compared to H.264/AVC in order to exploit the advantages of RPS and improve error resilience. In H.264/AVC picture marking and buffer operations (both output and removal of decoded pictures from the DPB) are applied after a current picture has been decoded, with the exception of when gaps in FrameNum are detected. In HEVC, the RPS is first decoded from a slice header of the current picture, then picture marking and buffer operations are applied before decoding the current picture.
>
> The order of different processes for H.264/AVC and HEVC is shown in Figs. 8 and 9, respectively. As can be seen, the high-level decoding processes based on syntax elements in the slice header and above in HEVC have been significantly simplified compared to H.264/AVC thanks to the introduction of the RPS concept.

https://www.researchgate.net/publication/260665391_Overview_of_HEVC_High-Level_Syntax_and_Reference_Picture_Management.



Figure 3: Picture, slice, Coding Tree Unit (CTU), Coding Units (CUs)



Figure 5: Coding Tree Unit subdivided into Coding Units (source: Parabola Research)

https://www.vcodex.com/hevc-an-introduction-to-high-efficiency-coding/.

---

### 2.4.1   Picture Order Count and the DPB

Every picture in HEVC has a picture order count (POC) value assigned to it, denoted as PicOrderCntVal. It has three main uses: to uniquely identify pictures, to indicate the output position relative to other pictures in the same CVS, and to perform motion vector scaling within the lower-level VCL decoding process. All pictures in the same CVS must have a unique POC value. Pictures from different CVSs may share the same POC value, but pictures can still be uniquely identified since there are no possibilities to mix pictures from one CVS with any picture of another CVS. Gaps in POC values are allowed in a CVS—i.e., the POC value difference between two pictures that are consecutive in output order can differ by more than one (and in fact the amount by which the POC values for consecutive pictures may differ can vary arbitrarily).

The POC value of a picture is signaled by the slice_pic_order_cnt_lsb codeword in the slice header. The range of allowed POC values is from $-2^{31}$ to $2^{31} - 1$, so in order to save bits in the slice header, only the least significant bits of the POC value (POC LSB) is signaled. The number of bits to use for POC LSB can be between 4 and 16, and is signaled in the SPS. Since only the POC LSB is signaled in the slice header, the most significant POC value bits (POC MSB) for the current picture are derived from a previous picture, called prevTid0Pic. In order for POC derivation to work the same way even if pictures are removed, prevTid0Pic is set to the closest previous picture of temporal layer 0 that is not a RASL picture, a RADL picture, or a sub-layer non-reference picture. The decoder derives the POC MSB value by comparing the POC value of the current picture with the POC value of the prevTid0Pic picture.

---

https://doc.lagout.org/science/0_Computer%20Science/2_Algorithms/High%20Efficiency%20Video%20Coding%20%28HEVC%29_%20Algorithms%20and%20Architectures%20%5BSze%2C%20Budagavi%20%26%20Sullivan%202014-08-24%5D.pdf at p. 35.

TABLE II. REFERENCE PICTURE SET EXAMPLE

| Picture | RPS {reference picture, used by current picture} |
|---------|--------------------------------------------------|
| $I_0$ | - |
| $P_1$ | { $I_0$, 1 } |
| $B_2$ | { $I_0$, 1 }, { $P_1$, 1 } |
| $B_3$ | { $I_0$, 1 }, { $P_1$, 0 }, { $B_2$, 1 } |
| $B_4$ | { $P_1$, 1 }, { $B_2$, 1 } |



Fig. 7.  Coding structure for reference picture set example

https://www.researchgate.net/publication/260665391_Overview_of_HEVC_High-Level_Syntax_and_Reference_Picture_Management.

126.   The RPS information contains reference information indicating number of images to be referred to for decoding an image slice (*e.g.*, in the example below, images I0 and P1 are the "reference images" used to decode image B2 – where the "number of reference images" is two).

127.   The slice header containing the status of the DPB (Decoded Picture

Buffer) informs the HEVC Accused Product's H.265 decoder of the number of reference images to be referred to for decoding an image slice (*e.g.*, image B2 below requires two reference images to be decoded).

| Picture | RPS {reference picture, used by current picture} |
|---------|---------------------------------------------------|
| $I_0$ | - |
| $P_1$ | { $I_0$, 1 } |
| $B_2$ | { $I_0$, 1 }, { $P_1$, 1 } |
| $B_3$ | { $I_0$, 1 }, { $P_1$, 0 }, { $B_2$, 1 } |
| $B_4$ | { $P_1$, 1 }, { $B_2$, 1 } |

TABLE II. REFERENCE PICTURE SET EXAMPLE



Fig. 7. Coding structure for reference picture set example

> ## VI. REFERENCE PICTURE SETS
>
> ### A. Introduction
>
> The reference picture set (RPS) concept in HEVC defines how previously decoded pictures are managed in a decoded picture buffer (DPB) in order to be used for reference, i.e., sample data prediction and motion vector prediction. Pictures in the DPB

> can be marked as "used for short-term reference", "used for long-term reference" or "unused for reference". Once a picture has been marked "unused for reference" it can no longer be used for prediction, and when it is no longer needed for output it can be removed from the DPB. The RPS concept for reference picture management is fundamentally different from the reference picture management of previous video coding standards. Instead of signaling relative changes to the DPB, the status of the DPB is signaled in every slice. A goal in the HEVC development for reference picture management was to have a basic level of error robustness in all standard-conforming bitstreams and decoders.

https://www.researchgate.net/publication/260665391_Overview_of_HEVC_High-Level_Syntax_and_Reference_Picture_Management.

128.    The HEVC Accused Products perform a method that calculates, on a block-by-block basis using the reference information, a predictive data amount of a reference image to be read out on a block-by-block basis from a storage unit for decoding the coded image data, the storage unit storing data of at least one

reference image to be referred to for decoding the coded image data.

129.    For example, in H.265/HEVC, the DPB (Decoded Picture Buffer) is a "storage unit" that stores RPS information, including the reference images to be used for decoding an image slice. For example, the DPB can store three reference images (I0, P1, B2) that are used in the example's HEVC decoding process.

130.    The HEVC Accused Product's H.265 decoder uses the RPS "reference information" to calculate the amount of reference image data required to decode an image slice. More specifically, the H.265 decoder determines the total amount of reference image data ("predictive data amount") required to decode an image slice.

131.    For 'n' number of reference images the total "predictive data amount" is 'n' times the data amount of one reference image. In the example below, to decode the *B2* image the H.265 decoder calculates that a predictive data amount associated with two reference images (*I0* and *P1*) is to be read out from the DPB since two reference images are used to decode the image *B2*.

| TABLE II. REFERENCE PICTURE SET EXAMPLE | |
|---|---|
| **Picture** | **RPS {reference picture, used by current picture}** |
| $I_0$ | - |
| $P_1$ | { $I_0$, 1} |
| $B_2$ | { $I_0$, 1}, { $P_1$, 1} |
| $B_3$ | { $I_0$, 1}, { $P_1$, 0}, { $B_2$, 1} |
| $B_4$ | { $P_1$, 1}, { $B_2$, 1} |



Fig. 7.  Coding structure for reference picture set example

## D. Reference picture set example

An example of a coding structure is shown in Fig. 7. The RPSs for the pictures in Fig. 7 are shown in Table II. The first picture in decoding order is an IDR picture, $I_0$, for which no reference picture set is signaled since it is the first picture in the coded video sequence and no picture that precedes the IDR picture in decoding order can be used for reference by the IDR picture or by any picture that follows the IDR picture in decoding order. The second picture in decoding order, $P_1$, uses $I_0$ for reference. It must therefore include $I_0$ in its RPS. Picture $B_2$ uses both $I_0$ and $P_1$ for reference so they are both included in the RPS of $B_2$.

https://www.researchgate.net/publication/260665391_Overview_of_HEVC_High-Level_Syntax_and_Reference_Picture_Management.

The decoded picture buffer (DPB) in HEVC is a buffer that contains decoded pictures. Decoded pictures other than the current picture may be stored in the DPB either because they are needed for reference, or because they have not been output yet, something that is necessary to enable out-of-order output. Note that the current decoded picture is also stored in the DPB. Figure 2.12 shows two example referencing structures that both need a DPB size of at least three pictures. Pictures $P_1$ and $P_2$ in Fig 2.12a both need to be stored in the DPB when $P_3$ is being decoded since they are both output after $P_3$. The DPB therefore needs to be capable to store $P_1$, $P_2$, and $P_3$ simultaneously. In Fig. 2.12b, each picture uses two reference pictures so the DPB needs to be large enough to store three pictures simultaneously here as well. The referencing structure in Fig. 2.12b is an example of a so-called low-delay B structure, in which bi-prediction is extensively used without any out-of-order output.

https://doc.lagout.org/science/0_Computer%20Science/2_Algorithms/High%20Efficiency%20Video%20Coding%20%28HEVC%29_%20Algorithms%20and%20Ar

[chitectures%20%5BSze%2C%20Budagavi%20%26%20Sullivan%202014-08-24%5D.pdf](chitectures%20%5BSze%2C%20Budagavi%20%26%20Sullivan%202014-08-24%5D.pdf).

132.   The HEVC Accused Products determine, using the predictive data amount calculated, multiple blocks in the coded image data which are to be decoded in parallel, in such a manner as to reduce variation in amounts of data read out from the storage unit.

133.   For example, the HEVC Accused Product's H.265 decoder uses the "predictive data" and the reference images to determine the blocks (CTUs) that are to be decoded in parallel in the current image to be decoded.  The H.265 decoder determines the multiple blocks in image B2 to be decoded in parallel using exemplary reference images I0 and P1.  The exemplary coded image data can be decoded in parallel.



**Figure 1** Block diagram of the HEVC decoder.



**Figure 3** Decoder organization supporting multi-threaded overlapping wavefront execution.

https://sci-hub.ru/https://doi.org/10.1007/s11265-012-0714-2.

| Picture | RPS {reference picture, used by current picture} |
|---------|--------------------------------------------------|
| $I_0$ | - |
| $P_1$ | { $I_0$, 1} |
| $B_2$ | { $I_0$, 1}, { $P_1$, 1} |
| $B_3$ | { $I_0$, 1}, { $P_1$, 0}, { $B_2$, 1} |
| $B_4$ | { $P_1$, 1}, { $B_2$, 1} |

TABLE II. REFERENCE PICTURE SET EXAMPLE



Fig. 7.  Coding structure for reference picture set example

https://www.researchgate.net/publication/260665391_Overview_of_HEVC_High-Level_Syntax_and_Reference_Picture_Management.



Figure 5: Coding Tree Unit subdivided into Coding Units (source: Parabola Research)

https://www.vcodex.com/hevc-an-introduction-to-high-efficiency-coding/.

134.   The HEVC Accused Products decode in parallel the determined multiple blocks in the coded image data.

135.   For example, the Accused Product's H.265 decoder decodes the determined multiple blocks in parallel, and multiple blocks in exemplary image B2 are decoded in parallel while the exemplary H.265 decoder uses images I0 and P1 as reference images to decode the same.  The coded image data is decoded in parallel (for example, picture B2 is decoded using two reference pictures).

| TABLE II. REFERENCE PICTURE SET EXAMPLE | |
|---|---|
| **Picture** | **RPS {reference picture, used by current picture}** |
| $I_0$ | - |
| $P_1$ | { $I_0$, 1} |
| $B_2$ | { $I_0$, 1}, { $P_1$, 1} |
| $B_3$ | { $I_0$, 1}, { $P_1$, 0}, { $B_2$, 1} |
| $B_4$ | { $P_1$, 1}, { $B_2$, 1} |



Fig. 7. Coding structure for reference picture set example

https://www.researchgate.net/publication/260665391_Overview_of_HEVC_High-Level_Syntax_and_Reference_Picture_Management.



Figure 5: Coding Tree Unit subdivided into Coding Units (source: Parabola Research)

https://www.vcodex.com/hevc-an-introduction-to-high-efficiency-coding/.



https://perso.telecom-paristech.fr/cagnazzo/doc/MN910/ADV/h264_hevc.pdf at Slide 93.

136.   SPV notified Insta360 that it infringed the '476 Patent no later than the filing date of this complaint.

137.   Insta360's knowledge of the '476 Patent, which covers operating the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '476 Patent are met, extends to its knowledge that the third-party infringers' use of the HEVC Accused Products directly infringes the '476 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

138.   Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use of the HEVC Accused Products directly infringes the '476 Patent.

139.   With knowledge of or willful blindness to the fact that the third-party infringers' use of the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '476 Patent are met directly infringes the '476 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '476 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the HEVC Accused Products by, for example: marketing the HEVC Accused Products HEVC/H.265 decoding capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the Insta360 HEVC Accused Products; and providing technical assistance to the third-party infringers during their continued use of the HEVC Accused Products such as by, for example, publishing instructional information on the Insta360 websites directing and encouraging third-party infringers how to use the HEVC/H.265 decoding capabilities of the HEVC Accused Products.

140.   Insta360 induces third-party infringers to infringe the asserted claims of the '476 Patent by directing or encouraging them to operate the HEVC Accused

Products which satisfy all limitations of the asserted claims of the '476 Patent. Insta360 advertises and promotes the HEVC/H.265 decoding capabilities of the HEVC Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 provides technical assistance directing and instructing third parties how to operate the HEVC Accused Products by, for example, publishing instructional materials, videos, troubleshooting, manuals, and user guides.

141.    In response, the third-party infringers acquire and operate the HEVC Accused Products in an infringing manner.

142.    Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the HEVC Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '476 Patent. For example, the HEVC Accused Products include HEVC/H.265 features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the HEVC Accused Products.

143.    Insta360 also knew and intended that the HEVC Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '476 Patent.

144.    The HEVC/H.265 features are specially made and adapted to infringe the asserted claims of the '476 Patent.

145.    The HEVC/H.265 features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the HEVC Accused Products solely in a manner that is covered by the '476 Patent, they have no substantial non-infringing use. At least by SPV's notice of Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '476 Patent and they were in fact used to infringe.

146.    Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '476 Patent under 35 U.S.C. § 271(c).

147.    Insta360's acts of infringement of the '476 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '476 Patent and how the HEVC Accused Products infringe them.  Rather than take a license to the '476 Patent, Insta360's

ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

148.    Insta360's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

**COUNT 4**
**INFRINGEMENT OF U.S. PATENT NO. 8,971,401.**

149.    SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

150.    SPV is the owner, by assignment, of U.S. Patent No. 8,971,401.  The '401 Patent was issued by the United States Patent and Trademark Office on March 3, 2015.

151.    As the owner of the '401 Patent, SPV holds all substantial rights in and under the '401 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

152.    The '401 Patent is valid, enforceable and was duly issued in full

compliance with Title 35 of the United States Code.

153.    Insta360 has infringed, and continues to infringe, at least claim 1 of the '401 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing HEVC Accused Products and all similar products that infringe the '401 Patent without authorization or license as exemplified below.

154.    The HEVC Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '401 Patent and feature structure and/or functionality comprising the steps noted above.

155.    Insta360 has used and tested the HEVC Accused Products in the United States.

156.    Insta360 has infringed and continues to infringe the '401 Patent.

157.    Insta360's activities were without authority or license.

158.    Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the HEVC Accused Products according to their normal and intended use.

159.    The HEVC Accused Products meet each and every limitation of each asserted claim of the '401 Patent either literally or under the doctrine of

equivalents.

160.    Claim 1 of the '401 Patent recites an embodiment of the claimed subject matter:

An image decoding device for processing an input bit stream containing encoded data obtained by encoding a moving picture using intra-frame prediction, where each of the macroblocks of the moving picture includes a plurality of prediction units for the intra-frame prediction, the image decoding device comprising:

a stream divider configured to divide the input bit stream into a plurality of sub-streams; and

a plurality of image decoders each configured to decode the corresponding one of the plurality of sub-streams, thereby outputting images,

wherein the stream divider divides the encoded data corresponding to one of the macroblocks into groups each made up of at least one of the prediction units and outputs the sub-streams so that the groups are included in different ones of the sub-streams, each of the sub-streams includes prediction units from different macroblocks.

161.   The HEVC Accused Products are image decoding devices for processing an input bit stream containing encoded data obtained by encoding a moving picture using intra-frame prediction, where each of the macroblocks of the moving picture includes a plurality of prediction units for the intra-frame prediction.

162.   The HEVC Accused Products decode input HEVC bitstreams encoded using intra-frame prediction.  The CTUs (macroblocks) of the video frames include a plurality of Prediction Units (PUs) for the intra-prediction.

| 3.110 | **prediction unit**: A *prediction block* of *luma* samples, two corresponding *prediction blocks* of *chroma* samples of a *picture* that has three sample arrays, or a *prediction block* of samples of a monochrome *picture* or a *picture* that is coded using three separate colour planes and *syntax structures* used to predict the *prediction block* samples. |

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 9.



**Fig. 3.1**  Block diagram of an HEVC encoder with built-in decoder (*gray shaded*)

https://www.researchgate.net/publication/300315241_Block_Structures_and_Parallelism_Features_in_HEVC.



**Fig. 1**: General diagram of HEVC decoder

https://www.researchgate.net/publication/235760245_Parallel_video_decoding_in_the_emerging_HEVC_standard.



https://perso.telecom-paristech.fr/cagnazzo/doc/MN910/ADV/h264_hevc.pdf at

Slide 74.



https://perso.telecom-paristech.fr/cagnazzo/doc/MN910/ADV/h264_hevc.pdf at Slide 76.

163.   The HEVC Accused Products include a stream divider configured to divide the input bit stream into a plurality of sub-streams.

164.   For example, the general decoding process for intra blocks occurs separately for each color component of the Coding Units (*e.g.*, there is a sub-stream for each of the Y, Cb, and Cr color components).

165.    The decoder acts as a stream divider by dividing the input bit stream into sub-streams of color components (including prediction data and transform coefficients) as individual picture blocks are decoded.

---

**8.4.4    Decoding process for intra blocks**

**8.4.4.1    General decoding process for intra blocks**

Inputs to this process are:

– a sample location ( xTb0, yTb0 ) specifying the top-left sample of the current transform block relative to the top-left sample of the current picture,

– a variable log2TrafoSize specifying the size of the current transform block,

– a variable trafoDepth specifying the hierarchy depth of the current block relative to the coding unit,

– a variable predModeIntra specifying the intra prediction mode,

– a variable cIdx specifying the colour component of the current block,

– a variable controlParaAct specifying the applicable processes,

– when controlParaAct is equal to 2, a residual sample array resSamplesRec specifying the reconstructed residual samples for the current colour component of the current coding block.

Output of this process is a modified reconstructed picture before deblocking filtering when controlParaAct is not equal to 1, or a modified residual sample array resSampleArray for the current colour component of the current coding block when controlParaAct is equal to 1.

---

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 132.

**Table 7-4 – Specification of matrixId according to sizeId, prediction mode and colour component**

| sizeId | CuPredMode | cIdx (Colour component) | matrixId |
|---|---|---|---|
| 0, 1, 2, 3 | MODE_INTRA | 0 (Y) | 0 |
| 0, 1, 2, 3 | MODE_INTRA | 1 (Cb) | 1 |
| 0, 1, 2, 3 | MODE_INTRA | 2 (Cr) | 2 |
| 0, 1, 2, 3 | MODE_INTER | 0 (Y) | 3 |
| 0, 1, 2, 3 | MODE_INTER | 1 (Cb) | 4 |
| 0, 1, 2, 3 | MODE_INTER | 2 (Cr) | 5 |

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 93.

166.   The HEVC Accused Products include a plurality of image decoders each configured to decode the corresponding one of the plurality of sub-streams, thereby outputting images.

167.   For example, the multi-core architecture of the HEVC Accused Products includes a plurality of image decoders that comprise a plurality of physical and/or logical cores/threads/engines/units/etc/.  A plurality of such decoders is necessary to perform efficient decoding.  Additionally, while claim 1 of the '401 Patent does not mandate parallel decoding, the plurality of image decoders used by the HEVC Accused Products may operate in parallel (*e.g.,* for parallel slice decoding).

---

**0.3      Purpose**

This Recommendation | International Standard was developed in response to the growing need for higher compression of moving pictures for various applications such as videoconferencing, digital storage media, television broadcasting, internet streaming, and communications. It is also designed to enable the use of the coded video representation in a flexible manner for a wide variety of network environments as well as to enable the use of multi-core parallel encoding and decoding devices. The use of this Recommendation | International Standard allows motion video to be manipulated as a form of computer data and to be stored on various storage media, transmitted and received over existing and future networks and distributed on existing and future broadcasting channels. Supports for higher bit depths and enhanced chroma formats, including the use of full-resolution chroma are provided. Support for scalability enables video transmission on networks with varying transmission conditions and other scenarios involving multiple bit rate services. Support for multiview enables representation of video content with multiple camera views and optional auxiliary information. Support for 3D enables joint representation of video content and depth information with multiple camera views.

---

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 1.

## II. HEVC CODING DESIGN AND FEATURE HIGHLIGHTS

The HEVC standard is designed to achieve multiple goals, including coding efficiency, ease of transport system integration and data loss resilience, as well as implementability using parallel processing architectures. The following subsections briefly describe the key elements of the design by which these goals are achieved, and the typical encoder operation that would generate a valid bitstream. More details about the associated syntax and the decoding process of the different elements are provided in Sections III and IV.

https://sci-hub.ru/10.1109/TCSVT.2012.2221191 at 1650.

### 4. PARALLEL DECODING PROCESSING

**4.1 Multi-core requirements**

Video resolutions have been increasing rapidly over the past few years. As video resolution move to Ultra HD (e.g. 4kx2k, 8kx4k), one of the challenges facing the real-time video applications today is that a single core video decoder may find it difficult to handle Ultra HD resolution video in real-time. For years, the increase of clock-rates for CPUs has slowed down due to power limitations, despite process scaling [20]; multi-core architecture is widely used to increase performance while keeping cost and power consumption in check. The HEVC has adopted several parallel processing tools into the standard to support parallel processing on multi-core platforms. These tools include Tiles [21], Wavefront Parallel Processing (WPP) [22] and Entropy Slices (ES) [23].

For parallel decoding on multiple core platforms, the following design requirements should be considered:

- Pixel-rate balancing: the selected parallel processing tool should be able to divide a picture into sub-pictures of equal size (in unit of largest coding units, LCUs) so that pixel-rate balancing can be guaranteed when individual cores are processing sub-pictures in parallel [24].
- Line buffers can expensive in terms of area cost and memory bandwidth particularly at higher resolutions. It would be desirable for the selected parallel processing tool to be able to divide a picture into sub-pictures vertically to minimize line buffer size. In other words, the line buffer size per core can be kept constant.

https://sci-hub.ru/10.1117/12.953686 *Proc of SPIE*, vol. 8499, 849910-9.

To make tiles work for parallel decoding processing on multi-core platform, several restrictions would need to be imposed on the bitstream so that a decoder can rely on built-in parallel processing features to dispatch the bitstream to multi-core simultaneously for parallel decoding. Those restrictions are:

1. It should be mandated to divide an Ultra-HD picture into a number of uniformly spaced tiles so that pixel-rate balancing is guaranteed for multiple core platforms. Tile widths should not exceed single core line buffer width partitioning so that the single-core decoder line buffer does not need to be increased when single cores are replicated to build up multi-core decoder

2. Tiles should be independent for minimizing cross-core data communication. Only de-blocking filter, Sample Adaptive Offset (SAO), Adaptive Loop Filter (ALF) can cross tile boundaries.

3. Slices, entropy slices and WPPs, if present, should be contained within tiles and cannot cross tile boundaries

4. Tile sub-stream entries in bitstream are signaled in at picture level, so that a multi-core decoder can dispatch sub-streams to cores in parallel.

With uniformly spaced tiles and restrictions above, HEVC potentially enables a cost-effective way of building multi-core platforms for supporting Ultra-HD real-time decoding. As shown in Figure 14, a 8kx4k at 30 fps decoder can be built by simply replicating the 4kx2k at 30 fps single core decoder four times, and adding a sub-picture boundary processing core to perform e.g. de-blocking filter, Sample Adaptive Offset (SAO), Adaptive Loop Filter (ALF) along tile boundaries.

https://sci-hub.ru/10.1117/12.953686 at *Proc of SPIE*, vol. 8499, 849910-11.

168.    The HEVC Accused Products include wherein the stream divider divides the encoded data corresponding to one of the macroblocks into groups each made up of at least one of the prediction units and outputs the sub-streams so that the groups are included in different ones of the sub-streams, each of the sub-streams includes prediction units from different macroblocks.

169.    For example, the H.265 decoder of the HEVC Accused Products divides the stream as shown by the CTU portioning process.  The H.265 encoded data corresponding to one of the CTUs (macroblocks) is divided into a plurality of coding blocks (a CU comprises a CB from each color plane).  Each group includes at least one of the Prediction Blocks (a PU comprises PBs from each color plane).

170.    The luma CBs, containing luma PBs, are included in the respective luma sub-stream. The chroma CBs, containing chroma PBs, are included in the respective chroma sub-streams. The three color plane sub-streams (including prediction data and transform coefficients) comprising each CTU row contain Prediction Blocks from the different CTUs in the CTU rows.  A plurality of distinct CBs are stored in separate slices for each color plane (*e.g.,* "so that the groups are included in different ones of the sub-streams, each of the sub-streams includes prediction units [PBs] from different macroblocks.").



**Fig. 3.2** Illustration of the partitioning of a picture with 1280 × 720 luma samples into macroblocks and coding tree units: (**a**) Partitioning of the picture into 16 × 16 macroblocks as found in all prior video coding standards of the ITU-T and ISO/IEC; (**b**) Partitioning of the picture into 64 × 64 coding tree units, the largest coding tree unit size supported in the Main profile of HEVC

https://sci-hub.ru/10.1007/978-3-319-06895-4_3 at p. 55.



https://perso.telecom-paristech.fr/cagnazzo/doc/MN910/ADV/h264_hevc.pdf at Slide 74.



https://perso.telecom-paristech.fr/cagnazzo/doc/MN910/ADV/h264_hevc.pdf at Slide 76.

**6.3.2     Block and quadtree structures**

The samples are processed in units of CTBs. The array size for each luma CTB in both width and height is CtbSizeY in units of samples. The width and height of the array for each chroma CTB are CtbWidthC and CtbHeightC, respectively, in units of samples.

Each CTB is assigned a partition signalling to identify the block sizes for intra or inter prediction and for transform coding. The partitioning is a recursive quadtree partitioning. The root of the quadtree is associated with the CTB. The quadtree is split until a leaf is reached, which is referred to as the coding block. When the component width is not an integer number of the CTB size, the CTBs at the right component boundary are incomplete. When the component height is not an integer multiple of the CTB size, the CTBs at the bottom component boundary are incomplete.

The coding block is the root node of two trees, the prediction tree and the transform tree. The prediction tree specifies the position and size of prediction blocks. The transform tree specifies the position and size of transform blocks. The splitting information for luma and chroma is identical for the prediction tree and may or may not be identical for the transform tree.

The blocks and associated syntax structures are grouped into "unit" structures as follows:

–   One prediction block (monochrome picture or separate_colour_plane_flag is equal to 1) or three prediction blocks (luma and chroma components of a picture in 4:2:0 or 4:4:4 colour format) or five prediction blocks (luma and chroma components of a picture in 4:2:2 colour format) and the associated prediction syntax structures units are associated with a prediction unit.

–   One transform block (monochrome picture or separate_colour_plane_flag is equal to 1) or three transform blocks (luma and chroma components of a picture in 4:2:0 or 4:4:4 colour format) or five transform blocks (luma and chroma components of a picture in 4:2:2 colour format) and the associated transform syntax structures units are associated with a transform unit.

–   One coding block (monochrome picture or separate_colour_plane_flag is equal to 1) or three coding blocks (luma and chroma), the associated coding syntax structures and the associated prediction and transform units are associated with a coding unit.

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 25.

171.   SPV notified Insta360 that it infringed the '401 Patent no later than the filing date of this complaint.

172.   Insta360's knowledge of the '401 Patent, which covers operating the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '401 Patent are met, extends to its knowledge that the third-party infringers' use of the HEVC Accused Products directly infringes the '401 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

173.    Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use of the HEVC Accused Products directly infringes the '401 Patent.

174.    With knowledge of or willful blindness to the fact that the third-party infringers' use of the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '401 Patent are met directly infringes the '401 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '401 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the HEVC Accused Products by, for example: marketing the HEVC Accused Products with HEVC/H.265 decoding capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the HEVC/H.265 decoding functionalities; and providing technical assistance to the third-party infringers during their continued use of the HEVC Accused Products such as by, for example, publishing instructional information on the Insta360 websites directing and encouraging third-party infringers how to make and use the HEVC/H.265 decoding capabilities of the HEVC Accused Products.

175.    Insta360 induces third-party infringers to infringe the asserted claims of the '401 Patent by directing or encouraging them to operate the HEVC Accused

Products which satisfy all limitations of the asserted claims of the '401 Patent. Insta360 advertises and promotes the HEVC/H.265 decoding features of the HEVC Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 provides technical assistance directing and instructing third parties how to operate the HEVC Accused Products by, for example, publishing instructional materials, videos, troubleshooting, manuals, and user guides.

176.   In response, the third-party infringers acquire and operate the HEVC Accused Products in an infringing manner.

177.   Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the HEVC Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '401 Patent. For example, the HEVC Accused Products include HEVC decoding features above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail themselves of the intended functionality of the HEVC Accused Products.

178.    Insta360 also knew and intended that the HEVC Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '401 Patent.

179.    The HEVC/H.265 decoding features are specially made and adapted to infringe the asserted claims of the '401 Patent.

180.    The HEVC/H.265 decoding features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the HEVC Accused Products solely in a manner that is covered by the '401 Patent, they have no substantial non-infringing use. At least by SPV's notice of Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '401 Patent and they were in fact used to infringe.

181.    Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '401 Patent under 35 U.S.C. § 271(c).

182.    Insta360's acts of infringement of the '401 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '401 Patent and how the HEVC Accused Products infringe them.  Rather than take a license to the '401 Patent, Insta360's

ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

183.   Insta360's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 5
## INFRINGEMENT OF U.S. PATENT NO. 9,414,059

184.   SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

185.   SPV is the owner, by assignment, of U.S. Patent No. 9,414,059.  The '059 Patent was issued by the United States Patent and Trademark Office on August 9, 2016.

186.   As the owner of the '059 Patent, SPV holds all substantial rights in and under the '059 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

187.   The '059 Patent is valid, enforceable and was duly issued in full

compliance with Title 35 of the United States Code.

188.    Insta360 has infringed, and continues to infringe, at least claim 1 of the '059 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing HEVC Accused Products and all similar products that infringe the '059 Patent without authorization or license as exemplified below.

189.    The HEVC Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '059 Patent and feature structure and/or functionality comprising the steps noted above.

190.    Insta360 has used and tested the HEVC Accused Products in the United States.

191.    Insta360 has infringed and continues to infringe the '059 Patent.

192.    Insta360's activities were without authority or license.

193.    Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the HEVC Accused Products according to their normal and intended use.

194.    The HEVC Accused Products meet each and every limitation of each asserted claim of the '059 Patent either literally or under the doctrine of

equivalents.

195.   Claim 1 recites an embodiment of the claimed subject matter:

1.   An image processing device which performs plural first processes, by
pipelining, on a coded stream obtained by dividing an image into plural
coding unit blocks according to at least two numbers of pixels and coding
the image on a coding unit block-by-block basis, the image processing
device comprising:

plural first process units configured to perform, by the pipelining, the
plural first processes on the coded stream by each executing one of the
plural first processes; and

a control unit configured to divide or connect portions of the coded
stream into plural first processing unit blocks according to a first
number of pixels, each of the first processing unit blocks having the
same number of pixels in the image, and control the plural first
process units to cause the plural first processes to be executed for each
of the first processing unit blocks.

196.   The HEVC Accused Products are examples of image processing
devices which perform plural first processes, by pipelining, on a coded stream

obtained by dividing an image into plural coding unit blocks according to at least two numbers of pixels and coding the image on a coding unit block-by-block basis.

197.  The HEVC Accused Products support H.265/HEV, which uses multi-core video encoding/decoding.  This type of coding uses pipelined coding operations (where the output of a coding process is used as the input for the subsequent coding process).

| 0.3 | Purpose |
|---|---|
| This Recommendation | International Standard was developed in response to the growing need for higher compression of moving pictures for various applications such as videoconferencing, digital storage media, television broadcasting, internet streaming, and communications. It is also designed to enable the use of the coded video representation in a flexible manner for a wide variety of network environments as well as to enable the use of multi-core parallel encoding and decoding devices. The use of this Recommendation | International Standard allows motion video to be manipulated as a form of computer data and to be stored on various storage media, transmitted and received over existing and future networks and distributed on existing and future broadcasting channels. Supports for higher bit depths and enhanced chroma formats, including the use of full-resolution chroma are provided. Support for scalability enables video transmission on networks with varying transmission conditions and other scenarios involving multiple bit rate services. Support for multiview enables representation of video content with multiple camera views and optional auxiliary information. Support for 3D enables joint representation of video content and depth information with multiple camera views. | |

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 1.

198.  H.265/HEVC standardizes video coding processes for pipelining a coded stream consisting of coding unit blocks and coding the image on a block-by-block basis.



**Fig. 1**: General diagram of HEVC decoder

https://www.researchgate.net/publication/235760245_Parallel_video_decoding_in_the_emerging_HEVC_standard. ICASSP IEEE 2012 at 1545.



**Fig. 3.4**  Example for the partitioning of a 64 × 64 coding tree unit (CTU) into coding units (CUs) of 8 × 8 to 32 × 32 luma samples. The partitioning can be described by a quadtree, also referred to as coding tree, which is shown on the *right*. The numbers indicate the coding order of the CUs

https://sci-hub.ru/10.1007/978-3-319-06895-4_3, V. Sze et al. (eds.), High Efficiency Video Coding (HEVC): Algorithms and Architectures, Integrated Circuits and Systems, Springer International Publishing Switzerland (2014) at p. 58.

199.   A coding unit in H.265 is a block (coding unit block) that comprises arrays of samples (individual pixel data) that are used to code an image. The coding is performed on a block-by-block basis because an image will be partitioned into multiple coding units to be coded. The coding unit blocks can be of various sizes and are therefore sized according to at least two numbers of pixels (*e.g.,* 64x64 or 8x8).  A coding unit is a block that is resultant from the partitioning of a coding tree unit.

| | |
|---|---|
| 3.33 | **coding block**: An NxN *block* of samples for some value of N such that the division of a *CTB* into *coding blocks* is a *partitioning*. |
| 3.34 | **coding tree block (CTB)**: An NxN *block* of samples for some value of N such that the division of a *component* into *CTBs* is a *partitioning*. |
| 3.35 | **coding tree unit (CTU)**: A *CTB* of *luma* samples, two corresponding *CTBs* of *chroma* samples of a *picture* that has three sample arrays, or a *CTB* of samples of a monochrome *picture* or a *picture* that is coded using three separate colour planes and *syntax structures* used to code the samples. |
| 3.36 | **coding unit**: A *coding block* of *luma* samples, two corresponding *coding blocks* of *chroma* samples of a *picture* that has three sample arrays, or a *coding block* of samples of a monochrome *picture* or a *picture* that is coded using three separate colour planes and *syntax structures* used to code the samples. |
| 3.37 | **component**: An array or single sample from one of the three arrays (*luma* and two *chroma*) that compose a *picture* in 4:2:0, 4:2:2, or 4:4:4 colour format or the array or a single sample of the array that compose a *picture* in monochrome format. |

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 6.

### 3.  PARALLEL MERGE/SKIP

HEVC uses a different coded block structure as compare with H.264/AVC. Specifically, HEVC uses larger blocks compare to H.264/AVC.  The largest coding unit (LCU) is 64x64 pixels which is 16 times larger than the 16x16 pixel macroblock in H.264/AVC.  Using a large coding unit helps to improve coding efficiency, particularly for high resolutions where many pixels may share the same characteristic.  Furthermore, the largest coding unit can be divided into smaller coding units using a quad tree structure as shown in Figure 7.  A split flag is transmitted to signal whether a CU should be divided into four smaller CUs.  The smallest coding unit (SCU) allowed in HEVC is 8x8 pixels.  An additional feature in HEVC is that within an LCU, there can be a mixture of inter and intra coding units.  The coding units can be further divided into prediction units (PU).  The PU within a coding unit will undergo the same form of prediction (either all inter or all intra).  The PU sizes within a CU depend on whether the CU is inter or intra predicted.

https://sci-hub.ru/10.1117/12.953686 (Proc. of SPIE Vol. 8499) at 849910-5.

200.    The HEVC Accused Products include plural first process units configured to perform, by the pipelining, the plural first processes on the coded stream by each executing one of the plural first processes.

201.    The HEVC Accused Products uses H.265/HEVC, which is designed for multi-core platforms where multiple decoding units (plural first processing units) are configured to perform decoding (*e.g.*, plural first processes 8.4, 8.5, 8.6, and 8.7 as described in ITU-T H.265) on the coded stream.

202.    The cores are assigned to perform each of the first processes (*e.g.*, a processing core for performing the in-loop filter process). The plural first processes are pipelined such that 8.4 and/or 8.5 are necessary for 8.6, and 8.6 is necessary for 8.7.  While process 8.6 is being performed, process 8.4 and/or 8.5 can begin work on the next coding unit.

| 8.4 | Decoding process for coding units coded in intra prediction mode |
| 8.5 | Decoding process for coding units coded in inter prediction mode |
| 8.6 | Scaling, transformation and array construction process prior to deblocking filter process |
| 8.7 | In-loop filter process |

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 126, 142, 175, 184.

203.    In a plural process environment, all elements need to complete

processing at approximately the same time. H.265/HEVC is designed in a quadtree structure so it would be impractical in a hardware design to allocate the same amount of processing time to a subtree leaf (8x8 CU) as to a higher branch (64x64) CU. A 64x64 CU cannot be processed with any more plurality than an 8x8 CU. A 64x64 CU takes a finite amount of time which is a multiple of the amount of time it takes to process an 8x8 CU. A pipelined hardware design processes a plurality of 8x8 CUs in the time it takes to process a single 64x64 CU.

204.   The HEVC Accused Products includes a control unit configured to divide or connect portions of the coded stream into plural first processing unit blocks according to a first number of pixels, each of the first processing unit blocks having the same number of pixels in the image, and control the plural first process units to cause the plural first processes to be executed for each of the first processing unit blocks.

205.   For example, a H.265/HEVC decoder has a control unit.



Fig. 2: Block diagram of the CABAC decoder for HEVC. Black-filled blocks represent the stage registers used for pipelining.

https://sci-hub.ru/10.1109/TCSVT.2014.2363748, DOI 10.1109 / TCSVT.2014.2363748, IEEE Transactions on Circuits and Systems for Video Technology, at p. 2.

206.   The control unit, for example the processor/SoC of the HEVC Accused Products, divides the coded stream into image frames that are further partitioned into square CTUs that will all be the same size 2N where N= {4,5,6}, $2^N \times 2^N$ being the first number of pixels.

As already mentioned, in HEVC, each picture is partitioned into square-shaped coding tree blocks (CTBs) such that the resulting number of CTBs is identical for both the luma and chroma picture components (assuming a non-monochrome video format).[2] Consequently, each CTB of luma samples together with its two corresponding CTBs of chroma samples and the syntax associated with these sample blocks is subsumed under a so-called coding tree unit (CTU). A CTU represents the basic processing unit in HEVC and is in that regard similar to the concept of a macroblock in prior video coding standards. The luma CTB covers a square picture area of $2^N \times 2^N$ luma samples. In the 4:2:0 chroma sampling format, each of the two chroma CTBs covers the corresponding area of $2^{N-1} \times 2^{N-1}$ chroma samples of one of the two chroma components. The parameter $N$ is transmitted in the sequence parameter set and can be chosen by the encoder among the values $N = 4, 5,$ and $6$, corresponding to CTU sizes of $16 \times 16$, $32 \times 32$, and $64 \times 64$



**Fig. 3.2** Illustration of the partitioning of a picture with 1280 × 720 luma samples into macro-blocks and coding tree units: (**a**) Partitioning of the picture into 16 × 16 macroblocks as found in all prior video coding standards of the ITU-T and ISO/IEC; (**b**) Partitioning of the picture into 64 × 64 coding tree units, the largest coding tree unit size supported in the Main profile of HEVC

https://sci-hub.ru/10.1007/978-3-319-06895-4_3, V. Sze et al. (eds.), High Efficiency Video Coding (HEVC): Algorithms and Architectures, Integrated Circuits and Systems, DOI 10.1007/978-3-319-06895-4_3, at p 55.

207.   The plural first processes are executed for each of the CTUs in each image frame of the coded stream.  For each picture (CurrPic), the plural first process units will execute the plural first processes for each of the CTUs.

The decoding process operates as follows for the current picture CurrPic:

1.   The decoding of NAL units is specified in clause 8.2.

2.   The processes in clause 8.3 specify the following decoding processes using syntax elements in the slice segment layer and above:

   –   Variables and functions relating to picture order count are derived as specified in clause 8.3.1. This needs to be invoked only for the first slice segment of a picture.

   –   The decoding process for RPS in clause 8.3.2 is invoked, wherein reference pictures may be marked as "unused for reference" or "used for long-term reference". This needs to be invoked only for the first slice segment of a picture.

   –   A picture storage buffer in the DPB is allocated for storage of the decoded sample values of the current picture after the invocation of the in-loop filter process as specified in clause 8.7. This version of the current decoded picture is referred to as the current decoded picture after the invocation of the in-loop filter process. When TwoVersionsOfCurrDecPicFlag is equal to 0 and pps_curr_pic_ref_enabled_flag is equal to 1, this picture storage buffer is marked as "used for long-term reference". When TwoVersionsOfCurrDecPicFlag is equal to 1, another picture storage buffer in the DPB is allocated for storage of the decoded sample values of the current picture immediately before the invocation of the in-loop filter process as specified in clause 8.7, and is marked as "used for long-term reference". This version of the current decoded picture is referred to as the current decoded picture before the invocation of the in-loop filter process. This needs to be invoked only for the first slice segment of a picture.

      NOTE 2 – When TwoVersionsOfCurrDecPicFlag is equal to 0, there is only one version of the current decoded picture. In this case, if pps_curr_pic_ref_enabled_flag is equal to 1, the current decoded picture is marked as "used for long-term reference" during the decoding of the current picture and will be marked as "used for short-term reference" at the end of the decoding of the current picture, otherwise it is not marked at all during the decoding of the current picture and will be marked as "used for short-term reference" at the end of the decoding of the current picture. When TwoVersionsOfCurrDecPicFlag is equal to 1, there are two versions of the current decoded picture, one of which is marked as "used for long-term reference" during the decoding of the current picture and will be marked as "unused for reference" at the end of the decoding of the current picture, and the other version is not marked at all during the decoding of the current picture and will be marked as "used for short-term reference" at the end of the decoding of the current picture.

   –   When the current picture is a BLA picture or is a CRA picture with NoRaslOutputFlag equal to 1, the decoding process for generating unavailable reference pictures specified in clause 8.3.3 is invoked, which needs to be invoked only for the first slice segment of a picture.

   –   PicOutputFlag is set as follows:

      –   If the current picture is a RASL picture and NoRaslOutputFlag of the associated IRAP picture is equal to 1, PicOutputFlag is set equal to 0.

      –   Otherwise, PicOutputFlag is set equal to pic_output_flag.

> – At the beginning of the decoding process for each P or B slice, the decoding process for reference picture lists construction specified in clause 8.3.4 is invoked for derivation of reference picture list 0 (RefPicList0) and, when decoding a B slice, reference picture list 1 (RefPicList1), and the decoding process for collocated picture and no backward prediction flag specified in clause 8.3.5 is invoked for derivation of the variables ColPic and NoBackwardPredFlag.
>
> 3. The processes in clauses 8.4, 8.5, 8.6 and 8.7 specify decoding processes using syntax elements in all syntax structure layers. It is a requirement of bitstream conformance that the coded slices of the picture shall contain slice segment data for every CTU of the picture, such that the division of the picture into slices, the division of the slices into slice segments and the division of the slice segments into CTUs each forms a partitioning of the picture.
>
> 4. After all slices of the current picture have been decoded, the current decoded picture after the invocation of the in-loop filter process as specified in clause 8.7 is marked as "used for short-term reference". When TwoVersionsOfCurrDecPicFlag is equal to 1, the current decoded picture before the invocation of the in-loop filter process as specified in clause 8.7 is marked as "unused for reference".

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at 118-19. 136, 137.

| | |
|---|---|
| **8.4** | **Decoding process for coding units coded in intra prediction mode** |
| **8.5** | **Decoding process for coding units coded in inter prediction mode** |
| **8.6** | **Scaling, transformation and array construction process prior to deblocking filter process** |
| **8.7** | **In-loop filter process** |

https://www.itu.int/rec/T-REC-H.265/en (H.265 Specification (11/2019)) at p. 126, 142, 175, 184.

208.   SPV notified Insta360 that it infringed the '059 Patent no later than the filing date of this complaint.

209.   Insta360's knowledge of the '059 Patent, which covers operating the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '059 Patent are met, extends to its knowledge that the third-party infringers' use of the HEVC Accused Products directly infringes the '059

Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

210.    Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use of the HEVC Accused Products directly infringes the '059 Patent.

211.    With knowledge of or willful blindness to the fact that the third-party infringers' use of the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '059 Patent are met directly infringes the '059 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '059 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the HEVC Accused Products by, for example: marketing the HEVC Accused Products HEVC/H.265 decoding capabilities to the third-party infringers; supporting and managing the third-party infringers' use of the HEVC/H.265 decoding capabilities functionalities; and providing technical assistance to the third-party infringers during their continued use of the HEVC Accused Products such as by, for example, publishing instructional information on the Insta360 websites directing and encouraging third-party infringers how to make and use the HEVC/H.265 decoding features of the HEVC Accused Products.

212.    Insta360 induces third-party infringers to infringe the asserted claims

of the '059 Patent by directing or encouraging them to operate the HEVC Accused Products which satisfy all limitations of the asserted claims of the '059 Patent. Insta360 advertises and promotes the HEVC/H.265 decoding features of the HEVC Accused Products and encourages the third-party infringers to operate them in an infringing manner. Insta360 provides technical assistance directing and instructing third parties how to operate the HEVC Accused Products by, for example, publishing instructional materials, videos, troubleshooting, manuals, and user guides.

213.    In response, the third-party infringers acquire and operate the HEVC Accused Products in an infringing manner.

214.    Insta360 has sold, provided and/or licensed to the third-party infringers and continues to sell, provide and/or license the HEVC Accused Products that are especially made and adapted—and specifically intended by Insta360—to be used as components and material parts of the inventions covered by the '059 Patent. For example, the HEVC Accused Products include HEVC/H.265 decoding features identified above which the third-party infringers used in a manner such that all limitations of the asserted claims are met, and without which the third-party infringers would have been unable to use and avail

themselves of the intended functionality of the HEVC Accused Products.

215.   Insta360 also knew and intended that the HEVC Accused Products would be operated in a manner consistent with normal and intended use, which use practices the asserted claims of the '059 Patent.

216.   The HEVC/H.265 decoding features are specially made and adapted to infringe the asserted claims of the '059 Patent.

217.   The HEVC/H.265 decoding features are not a staple article or commodity of commerce, and, because these functionalities were designed to work with the HEVC Accused Products solely in a manner that is covered by the '059 Patent, they have no substantial non-infringing use. At least by SPV's notice of Insta360's infringement, Insta360 knew of or was willfully blind to the fact that such functionalities infringe and were especially made and adapted for use that infringes the '059 Patent and they were in fact used to infringe.

218.   Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '059 Patent under 35 U.S.C. § 271(c).

219.   Insta360's acts of infringement of the '059 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '059 Patent and how the HEVC Accused

Products infringe them. Rather than take a license to the '059 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

220. Insta360's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

**COUNT 6**
**INFRINGEMENT OF U.S. PATENT NO. 9,667,972**

221. SPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

222. SPV is the owner, by assignment, of U.S. Patent No. 9,667,972. The '972 Patent was issued by the United States Patent and Trademark Office on May 30, 2017.

223. As the owner of the '972 Patent, SPV holds all substantial rights in and under the '972 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

224.   The '972 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

225.   Insta360 has infringed, and continues to infringe, at least claim 5 of the '972 Patent by making, using, offering to sell, selling, distributing, licensing, and/or importing HEVC Accused Products and all similar products that infringe the '972 Patent without authorization or license as exemplified below.

226.   The HEVC Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '972 Patent and feature structure and/or functionality comprising the steps noted above.

227.   Insta360 has used and tested the HEVC Accused Products in the United States.

228.   Insta360 has infringed and continues to infringe the '972 Patent.

229.   Insta360's activities were without authority or license.

230.   Insta360's users, customers, distributors, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using the HEVC Accused Products according to their normal and intended use.

231.   The HEVC Accused Products meet each and every limitation of each

asserted claim of the '972 Patent either literally or under the doctrine of equivalents.

232.  Claim 5 recites an embodiment of the claimed subject matter:

5. An image encoding method that causes a programmed computer to compression-encode an image in units of blocks having a predetermined size, the image encoding method having a first encoding mode in which a motion vector of an encoding-target block is not encoded and the motion vector of the encoding-target block is calculated based on motion vectors of a plurality of adjacent blocks that are adjacent to the encoding-target block, each of adjacent blocks being an immediate neighbor of the encoding-target block, and each of adjacent blocks preceding the encoding-target block in coding order, the image encoding method comprising:

speculatively calculating, when the adjacent blocks include an adjacent block whose encoding mode has not yet been determined and in case the encoding-target block is to be encoded in the first encoding mode, one or more motion vector candidates for encoding the encoding-target block in the first encoding mode, each of the one or more motion vector candidates corresponding to one of some or all of

possible encoding modes for encoding the adjacent block; and

determining, when the encoding mode for the adjacent block is

determined from among the some or all of possible encoding modes,

one of the one or more motion vector candidates that corresponds to

the encoding mode for the adjacent block as a first motion vector for

encoding the encoding target block in the first encoding mode.

233.    The HEVC Accused Products perform a method that causes a programmed computer to compression-encode an image in units of blocks having a predetermined size, the image encoding method having a first encoding mode in which a motion vector of an encoding-target block is not encoded and the motion vector of the encoding-target block is calculated based on motion vectors of a plurality of adjacent blocks that are adjacent to the encoding-target block, each of adjacent blocks being an immediate neighbor of the encoding-target block, and each of adjacent blocks preceding the encoding-target block in coding order.

234.    For example, the HEVC Accused Products perform a method where H.265 encoder implements an image encoding method that compresses and encodes images on a block-by-block basis. The blocks (CTUs) have a 'predetermined' number of pixels (*e.g.*, 64 x 64 pixels). All block sizes including

the size of Coding Tree Units (CTUs), Coding Units (CUs), and Prediction Units (PUs) are known to the H.265 encoder. The image date partitioned into blocks each have a predetermined number of pixels.



https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



Figure 3: Picture, slice, Coding Tree Unit (CTU), Coding Units (CUs)

https://www.vcodex.com/hevc-an-introduction-to-high-efficiency-coding/

In H.265/HEVC standards, the input video is divided into a sequence of coding-tree units (CTUs), and the CTU is divided into the coding unit (CU) with a different size. The CU is a square region, each of which may be as large as $64 \times 64$ or as small as $8 \times 8$. The prediction unit (PU) is a region defined by partitioning the CU, and PU contains MV information. Current PU sizes for intercoded CUs are $2N \times 2N, 2N \times N, N \times 2N, N \times N, 2N \times nU, 2N \times nD, nL \times 2N$, and $nR \times 2N$, where $N \in \{4, 8, 16, 32\}$.

https://www.researchgate.net/publication/330583198_Spatial_Correlation-Based_Motion-Vector_Prediction_for_Video-Coding_Efficiency_Improvement



Figure 4: Video frame showing Slices and Coding Tree Units (source: Parabola Research)

https://www.vcodex.com/hevc-an-introduction-to-high-efficiency-coding/



Figure 5: Coding Tree Unit subdivided into Coding Units (source: Parabola Research)

https://www.vcodex.com/hevc-an-introduction-to-high-efficiency-coding/



https://www.semanticscholar.org/paper/Analysis-of-the-intra-predictions-in-H.265-
HEVC-Chernyak/4a7f8aa430b72165a9cb2ed767a50e5d25973ee9

235.   The HEVC Accused Products perform a method where the H.265

encoder offers multiple encoding modes for a target block to be encoded (*e.g.*,

"encoding-target block") using motion vector information of adjacent blocks to the

target block—as to the encoding-target block  (*e.g.*, "a first encoding mode"). Prior

to encoding a motion vector of a target block, the H.265 encoder calculates motion

vector information of the target block with respect to a neighboring blocks adjacent

to the target block to be encoded. Additionally, the H.265 encoder requires spatial

and temporal motion vector predictor information before encoding the target block

in a first encoding mode.



Figure 2: PU and its neighbors

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



**Figure 1.** Advanced motion-vector-prediction (AMVP) candidates.

https://www.researchgate.net/publication/330583198_Spatial_Correlation-Based_Motion-Vector_Prediction_for_Video-Coding_Efficiency_Improvement

In H.265/HEVC standards, the input video is divided into a sequence of coding-tree units (CTUs), and the CTU is divided into the coding unit (CU) with a different size. The CU is a square region, each of which may be as large as $64 \times 64$ or as small as $8 \times 8$. The prediction unit (PU) is a region defined by partitioning the CU, and PU contains MV information. Current PU sizes for intercoded CUs are $2N \times 2N, 2N \times N, N \times 2N, N \times N, 2N \times nU, 2N \times nD, nL \times 2N,$ and $nR \times 2N,$ where $N \in \{4, 8, 16, 32\}$.

https://www.researchgate.net/publication/330583198_Spatial_Correlation-Based_Motion-Vector_Prediction_for_Video-Coding_Efficiency_Improvement

To carry out both types of predictions HEVC defines a special object — *Prediction Unit*, $(PU)$. In the case of intra prediction $PU$ is a square matrix

with $4 \times 4$, $8 \times 8$, $16 \times 16$ or $32 \times 32$ dimensions. In addition to the block which is being predicted the encoder requires pixels of five *neighboring* blocks: $A, B, C, D$ and $E$. The sets $B$ and $C$ are the extreme bottom lines of the directly upper and upper-right neighboring blocks; $D$ and $E$ — the extreme right columns of the directly left and lower left neighboring blocks; $A$ — is a single pixel located in the lower-right corner of the top-left block. Fig. 2 presents a prediction block and a set of its neighboring pixels.

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf

Table 1: Intra prediction modes and associated names

| Mode | Associated Name |
|---|---|
| 0 | INTRA_PLANAR |
| 1 | INTRA_DC |
| $2, \ldots, 34$ | INTRA_ANGULAR2, $\ldots$, INTRA_ANGULAR34 |

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf

> There are three interprediction modes: InterMode, SkipMode, and MergeMode [12]. For SkipMode and InterMode, an advanced motion-vector-prediction (AMVP) technique is used to generate a motion-vector predictor among an AMVP candidate set including two spatial MVPs and one temporal MVP. For MergeMode, the Merge scheme is used to select a motion-vector predictor among a Merge candidate set containing four spatial MVPs and a temporal MVP. By using rate-distortion-optimization (RDO) processing, the encoder selects a final MVP within the candidate list for InterMode, SkipMode, or MergeMode, and transmits the index of the selected MVP to the decoder. In the case of InterMode, the sum of absolute transform differences (SATD) between the

https://www.researchgate.net/publication/330583198_Spatial_Correlation-Based_Motion-Vector_Prediction_for_Video-Coding_Efficiency_Improvement

236.    The HEVC Accused Products perform a method where the adjacent blocks are immediate neighbors of the target block to be encoded by the H.265 encoder. H.265 performs a raster scan where each block is coded independently by following a scan order. The left and top neighbor blocks are encoded prior to encoding the target block, while the right and bottom neighbor blocks are encoded subsequently after encoding the target block (*e.g.*, "each of adjacent blocks preceding the encoding-target block in coding order.")



Figure 2: PU and its neighbors

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



**Figure 1.** Advanced motion-vector-prediction (AMVP) candidates.

https://www.researchgate.net/publication/330583198_Spatial_Correlation-Based_Motion-Vector_Prediction_for_Video-Coding_Efficiency_Improvement

> cycles determine *raster* scan of the four blocks. It should also be noted that when blocks are subdivided, each block is coded independently, and service information is transmitted in the bitstream for each of them.

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf

> The encoding block $PU$ is an input of the Algorithm 1, the computed array of MPM for this particular block is an output. Since frame coding comes from block to block in the raster scan, when encoding the current $PU$, its left and top neighbors have already been encoded, so their prediction modes are known. Their corresponding variables $D\_neighbor\_mode$ and $B\_neighbor\_mode$ are computed in blocks I and II of the Algorithm 1. It should be noted that de-

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf

237.   The HEVC Accused Products perform a method of speculatively calculating, when the adjacent blocks include an adjacent block whose encoding mode has not yet been determined and in case the encoding-target block is to be encoded in the first encoding mode, one or more motion vector candidates for encoding the encoding-target block in the first encoding mode, each of the one or more motion vector candidates corresponding to one of some or all of possible encoding modes for encoding the adjacent block.

238.   For example, the HEVC Accused Products H.265 encoder creates an MPM (Most Probable Mode) array based on the modes of the neighboring blocks comprised of possible encoding modes to encode the target block. When the

encoding mode of the blocks adjacent to the target block (in the below example, neighboring blocks C and E) are not determined, the H.265 encoder assumes a most probable mode to encode the target block (*e.g.*, "speculatively calculating") in case the target block is to be encoded in (*e.g.*, "in the first encoding mode") the encoding modes of encoded neighbor blocks. (in the below example, neighboring blocks B and D). Encoding modes of adjacent B and D blocks have already been determined and encoding modes of adjacent C and E blocks have not yet been determined.

> The encoding block $PU$ is an input of the Algorithm 1, the computed array of MPM for this particular block is an output. Since frame coding comes from block to block in the raster scan, when encoding the current $PU$, its left and top neighbors have already been encoded, so their prediction modes are known. Their corresponding variables $D\_neighbor\_mode$ and $B\_neighbor\_mode$ are computed in blocks I and II of the Algorithm 1. It should be noted that depending on the position of the encoded block, and the encoder configuration, the neighboring blocks can be encoded in inter mode or unavailable. In this case, the necessary variables are determined as $INTRA\_DC$. Further definition of the array $MPM$ is based on the modes of the neighboring blocks. The Algorithm 1 distinguishes the following cases: 1) matching – mismatching of the neighboring modes; 2) presence – absence of angular modes among the neighboring. It is assumed that the current block *most probably* will be encoded in the same mode as its neighbors. Consequently, the array $MPM$

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



Figure 2: PU and its neighbors

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



**Figure 1.** Advanced motion-vector-prediction (AMVP) candidates.

https://www.researchgate.net/publication/330583198_Spatial_Correlation-Based_Motion-Vector_Prediction_for_Video-Coding_Efficiency_Improvement

239. The HEVC Accused Products H.265 perform a method where the H.265 encoder considers all possible encoding modes comprising motion vector candidates to encode the target block. All the spatial and temporal motion vector information used to encode the target block corresponds to the spatial and temporal motion vector information of possible encoding modes for encoding the adjacent blocks.



Figure 2: PU and its neighbors

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



**Figure 1.** Advanced motion-vector-prediction (AMVP) candidates.

https://www.researchgate.net/publication/330583198_Spatial_Correlation-Based_Motion-Vector_Prediction_for_Video-Coding_Efficiency_Improvement

Their corresponding variables $D\_neighbor\_mode$ and $B\_neighbor\_mode$ are computed in blocks I and II of the Algorithm 1. It should be noted that depending on the position of the encoded block, and the encoder configuration, the neighboring blocks can be encoded in inter mode or unavailable. In this case, the necessary variables are determined as $INTRA\_DC$. Further definition of the array $MPM$ is based on the modes of the neighboring blocks. The Algorithm 1 distinguishes the following cases:  1) matching – mismatching of the neighboring modes; 2) presence – absence of angular modes among the neighboring. It is assumed that the current block *most probably* will be encoded in the same mode as its neighbors. Consequently, the array $MPM$ always contains modes of neighboring blocks and some of their «derivative» modes which are calculated differently depending on the type of the neighbors' modes.

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf

| Mode | Frequency | Mode | Frequency | Mode | Frequency |
|---|---|---|---|---|---|
| **0** | **18.245** | 12 | 1.087 | 24 | 1.794 |
| **1** | **9.177** | 13 | 1.267 | 25 | 1.242 |
| 2 | 1.418 | 14 | 1.559 | 26 | 4.164 |
| 3 | 1.218 | 15 | 1.667 | 27 | 1.28 |
| 4 | 1.365 | 16 | 2.265 | 28 | 1.92 |
| 5 | 1.422 | 17 | 3.394 | 29 | 2.134 |
| 6 | 2.426 | **18** | **5.491** | 30 | 2.195 |
| 7 | 2.025 | **19** | **4.595** | 31 | 1.685 |
| 8 | 1.165 | **20** | **4.32** | 32 | 1.567 |
| 9 | 0.835 | 21 | 4.073 | 33 | 1.67 |
| 10 | 1.353 | 22 | 4.049 | 34 | 1.728 |
| 11 | 0.831 | 23 | 3.373 | | |

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf

> In terms of modes occurring in the $MPM$ array there is a difference between intra_main configuration and others for this material. In the first case, the shares of a mode occurring in and missing the $MPM[0]$ array are roughly the same. In the second — the «outside $MPM$» situation is significantly more frequent. This difference may be explained by the fact that in the inter

> frame prediction case, the share of the intra mode is relatively low. In other words, the encoder often decides to encode a particular block using inter frame connections rather than intra. According to the Algorithm 1, if a neighboring block is unavailable, the $MPM$ array will get the most probable, in general, modes — 0, 1, and 26, which, according to the results of the experiment, are not optimal for the given video sequence.
>     Average results of modes occurring in $MPM$ are shown in Tab. 12.

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf

240.   The HEVC Accused Products perform a method determining, when the encoding mode for the adjacent block is determined from among the some or all of possible encoding modes, one of the one or more motion vector candidates that corresponds to the encoding mode for the adjacent block as a first motion vector for encoding the encoding target block in the first encoding mode.

241.   For example, the HEVC Accused Products H.265 encoder determines one or more motion vector candidates corresponding to the encoding mode to be used to encode the target encoding block. This encoding mode (*e.g.*, "the first encoding mode") is obtained based on the motion vector information (*e.g.*, "a first

motion vector") of the adjacent blocks (in the below example blocks B and D) and the H.265 encoder encodes the target block in that encoding mode (*e.g.*, "first encoding mode").



https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf

Having obtained $MPM$, further encoding takes place according to the Listing 1. Let's assume that the current $PU$ is being coded in the $mode$ mode; then there are two possibilities:  1) $mode \in MPM$; 2) $mode \notin MPM$.

In the first case, as $MPM$ depends only on the neighboring blocks, and may be computed both on the encoder and decoder sides, the bitstream need only contain the index of the element inside $MPM$. It is assumed that the $MPM[0]$ array is ordered by the frequency of modes used within it. In other

In the second case, if the required mode did not occur in the $MPM$, its coded number is transmitted in the bitstream (Line 14 of Listing 1). Since the standard defines a total of 35 intra prediction modes, with three of them known and found within $MPM$, HEVC proposes the following process for coding modes:  $g : \{0, 1, \ldots, 34\} \backslash MPM \longrightarrow \{0, 1, \ldots, 31\}$.  Because of the

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



Figure 2: PU and its neighbors

https://www.m-hikari.com/ams/ams-2014/ams-145-148-2014/chernyakAMS145-148-2014.pdf



**Figure 1.** Advanced motion-vector-prediction (AMVP) candidates.

https://www.researchgate.net/publication/330583198_Spatial_Correlation-Based_Motion-Vector_Prediction_for_Video-Coding_Efficiency_Improvement

242.   SPV notified Insta360 that it infringed the '972 Patent no later than the filing date of this complaint.

243.   Insta360's knowledge of the '972 Patent, which covers operating the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '972 Patent are met, extends to its knowledge that the third-party infringers' use of the HEVC Accused Products directly infringes the '972 Patent, or, at the very least, rendered Insta360 willfully blind to such infringement.

244.   Insta360 has, since at least as early as the filing date of this complaint, known or been willfully blind to the fact that the third-party infringers' use of the HEVC Accused Products directly infringes the '972 Patent.

245.   With knowledge of or willful blindness to the fact that the third-party infringers' use of the HEVC Accused Products in their intended manner such that all limitations of the asserted claims of the '972 Patent are met directly infringes the '972 Patent, Insta360 has actively encouraged the third-party infringers to directly infringe the '972 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the HEVC Accused Products by, for example: marketing the HEVC Accused Products with HEVC/H.265 encoding capabilities to the third-party infringers; supporting and managing the third-party infringers'

use of the Insta360 collaborative HEVC/H.265 encoding functionalities; and providing technical assistance to the third-party infringers during their continued use of the HEVC Accused Products such as by, for example, publishing instructional information on the Insta360 websites directing and encouraging third-party infringers how to make and use the HEVC/H.265 encoding features of the HEVC Accused Products.

246.    Insta360 induces third-party infringers to infringe the asserted claims of the '972 Patent by directing or encouraging them to operate the HEVC Accused Products which satisfy all limitations of the asserted claims of the '972 Patent. Insta360 advertises and promotes the HEVC/H.265 encoding feature of the HEVC Accused Products and encourages the third-party infringers to operate them in an infringing manner.  Insta360 provides technical assistance directing and instructing third parties how to operate the HEVC Accused Products by, for example, publishing instructional materials, videos, troubleshooting, manuals, and user guides.

247.    In response, the third-party infringers acquire and operate the HEVC Accused Products in an infringing manner.

248.    Insta360 has sold, provided and/or licensed to the third-party

infringers and continues to sell, provide and/or license the HEVC Accused

Products that are especially made and adapted—and specifically intended by

Insta360—to be used as components and material parts of the inventions covered

by the '972 Patent. For example, the HEVC Accused Products include

HEVC/H.265 encoding identified above which the third-party infringers used in a

manner such that all limitations of the asserted claims are met, and without which

the third-party infringers would have been unable to use and avail themselves of

the intended functionality of the HEVC Accused Products.

249.   Insta360 also knew and intended that the HEVC Accused Products

would be operated in a manner consistent with normal and intended use, which use

practices the asserted claims of the '972 Patent.

250.   The HEVC/H.265 encoding features are specially made and adapted

to infringe the asserted claims of the '972 Patent.

251.   The HEVC/H.265 encoding features are not a staple article or

commodity of commerce, and, because these functionalities were designed to work

with the HEVC Accused Products solely in a manner that is covered by the '972

Patent, they have no substantial non-infringing use. At least by SPV's notice of

Insta360's infringement, Insta360 knew of or was willfully blind to the fact that

such functionalities infringe and were especially made and adapted for use that infringes the '972 Patent and they were in fact used to infringe.

252.   Insta360 has contributorily infringed and continues to contributorily infringe the asserted claims of the '972 Patent under 35 U.S.C. § 271(c).

253.   Insta360's acts of infringement of the '972 Patent continue since notice and since this complaint was filed and are, therefore, carried out with knowledge of the asserted claims of the '972 Patent and how the HEVC Accused Products infringe them.  Rather than take a license to the '972 Patent, Insta360's ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

254.   Insta360's acts of direct and indirect infringement have caused and continue to cause damage to SPV for which SPV is entitled to recover damages sustained as a result of Insta360's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## NOTICE
## NOTICE OF REQUIREMENT OF LITIGATION HOLD

255.   Insta360 is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Insta360 knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

256.   As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information,

internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored.  These sources may also include any personal electronic, digital, and storage devices of any and all of Insta360's agents, resellers, distributors or employees if Insta360's electronically stored information resides there.

257.    Insta360 is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Insta360's claims and/or defenses. To avoid such a result, Insta360's preservation duties include, but are not limited to, the requirement that Insta360 immediately notify its agents, distributors, and employees to halt and/or supervise the auto-delete functions of Insta360's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

SPV hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

SPV prays for the following relief:

a. That Insta360 be summoned to appear and answer;

b. That the Court enter judgment that Insta360 has infringed the '498, '169, '476, '401, '059, and '972 Patents.

c. That the Court grant SPV judgment against Insta360 for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre- and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;

d. That Insta360's infringement be found to have been willful;

e. That this case be found to be exceptional under 35 U.S.C. § 285; and

f. That SPV be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated:  December 12, 2025

Respectfully submitted,

By:

Cabrach J. Connor
Cab@CLandS.com
Texas Bar No. 24036390
Jennifer Tatum Lee
Jennifer@CLandS.com
Texas Bar No. 24046950
John M. Shumaker
John@CLandS.com
Texas Bar No. 24033069

**CONNOR LEE & SHUMAKER PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.646.2060 Telephone
888.387.1134 Facsimile